Argued April 1, reargued July 8, affirmed September 5, 1968

GRANDELL ᴇᴛ ᴀʟ, *Appellants, v.* ROSEBURG
LUMBER COMPANY ᴇᴛ ᴀʟ, *Respondents.*

444 P. 2d 944

*P. J. Washburn,* Roseburg, argued and reargued the
cause for appellants. On the briefs were Horn, Slocum
& Washburn and William G. Carter, Roseburg.

*Eldon F. Caley,* Roseburg, argued and reargued the
cause for respondents. With him on the briefs were
Long, Neuner, Dole & Caley, Roseburg.

Robert Y. Thornton, Attorney General, Wallace
Carpenter, Chief Counsel, State Compensation Depart-
ment, Donald J. Howe, Assistant Attorney General and
Quintin B. Estell, Assistant Attorney General, Salem,

filed a brief amicus curiae for State Compensation Department.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

O'CONNELL, J.

This is an action brought by the beneficiaries of Norman Grandell, deceased, to recover benefits under the Workmen's Compensation Act. Plaintiffs appeal from a judgment of the trial court sustaining an order of the Workmen's Compensation Board which had affirmed the order of the Hearing Officer, all of which denied the claim of the beneficiaries.

The question is whether Norman Grandell suffered a compensable injury as defined by ORS 656.002(6), which reads as follows:

"(6) A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means."

Whether Grandell's injury arose out of his employment within the meaning of the statute is essentially a question of legal and medical causation, i.e., whether Grandell's work activity was a material contributing factor in causing his heart attack and eventually his death.

Grandell worked on the night shift for the Roseburg Lumber Company. On February 15 he was picked up at his home at 9:50 p.m. by a fellow workman. He was unusually quiet during the ride to work and he complained to his companion that he did not feel very well

and that his chest hurt. He started work at 11:00 p.m. at his usual job of sweeping the floor but after a few minutes the mill foreman asked him to substitute for another workman as a "sheet turner," a job Grandell had done many times previously. Grandell mentioned that he did not feel well but undertook the job. The following description of Grandell's job as sheet turner and the circumstances attending his attack are taken from the findings of the Hearing Officer.

"The sheets in question were pieces of plywood veneer (not plywood itself), and were roughly 4' x 8' in area and varied in thickness from 1/6 of an inch to 1/10 of an inch. The decedent's work involved lifting these sheets in combination with another employee. The reason there were two men to a sheet was not because of the weight of them, but because they were breakable and bulky and it took one man at each end to handle them. In general, he and his co-worker would handle one sheet at a time, although there would be occasions when they would have to handle two sheets at a time.

"Some of these sheets were hemlock and some were fir, but there was no material difference in weight or other characteristics between the fir and the hemlock. Taking into account the varying thickness of these sheets, they averaged between nine pounds and eleven pounds each. This of course would mean that the maximum load that the decedent and his co-worker would be handling at any time would be twenty pounds.

"The sheets would be handled at roughly ten sheets per minute. Although the work was described as sheet turner, in point of fact, it did not involve turning the sheets. It involved picking the sheets up and raising them to a height of between four feet and four and one half feet and depositing the sheets on the roller where the sheet spreader was working.

"Decedent had started on a slightly different operation which was slightly more difficult consisting of pulling these sheets out. This pulling out was done by himself, and when he complained about not feeling too well, he was put on this easier job just described. All of the witnesses agreed that while decedent was performing these activities, he complained that he did not feel well. Their description of his specific symptoms and appearance was rather vague, but there was no doubt that they all agreed that he did not feel well or look well. Also, when he had arrived at the parking lot and walked into the building, he walked with his head down. At sometime around 11:15 p.m. or 11:25 p.m., he felt too badly to continue and one of the workers was sent to get the car. It was subsequently decided that he should see the nurse and the nurse called the ambulance and he was taken to Roseburg hospital. He remained in the hospital and died about 11:00 p.m. February 17th, almost 48 hours exactly from the time he was performing his last work activities on the job."

The medical evidence consisted of the testimony and letter report of Dr. Campbell, the doctor who treated Grandell; a medical opinion report from Dr. Charles Grossman based upon a hypothetical question; a medical opinion report and the deposition of Dr. D. W. Sutherland, a cardiologist; and a medical opinion report and the deposition of Dr. W. E. Harris, a cardiologist.

Upon the basis of the medical testimony the hearing officer, the Board, and the trial court concluded that Grandell's work activity was not a material contributing factor in producing his heart attack. As the final triers of fact we have reached the same conclusion.

The judgment is affirmed.