Argued April 28, remanded with instructions June 11, petition for rehearing denied July 29, petition for review allowed by Supreme Court November 4, 1970. 

SAHNOW, *Appellant, v.* FIREMAN'S FUND INSURANCE COMPANY ET AL, *Respondents.*

470 P2d 378

*W. A. Franklin,* Portland, argued the cause for appellant. With him on the briefs were Franklin, Bennett, Des Brisay & Jolles, Portland.

*Daryll Klein,* Portland, argued the cause for respondents. With him on the brief were McMenamin, Blyth, Jones, Joseph & Lang, Portland.

Before SCHWAB, Chief Judge, and LANGTRY and FORT, Judges.

LANGTRY, J.

Plaintiff is the widow of a workman who died from heart disease which she claims arose out of and in the course of deceased's employment.

The hearing officer, the Workmen's Compensation Board, and the circuit court, successively rejected the claim and on this de novo appeal we are reviewing the record in accordance with the requirements of ORS 656.301, which provides that our scope of review shall be the same as that of the circuit court. ORS 656.298(6) provides:

> "The circuit court review shall be by a judge, without a jury, on the entire record forwarded by the board. The judge may remand the case to the hearing officer for further evidence taking, correction or other necessary action. However, the judge may hear additional evidence concerning disability that was not obtainable at the time of the hearing. The judge may affirm, reverse, modify or supplement the order appealed from, and make such disposition of the case as the judge determines to be appropriate."

This statute was construed in *Coday v. Willamette Tug and Barge*, 250 Or 39, 440 P2d 224 (1968), and *Beagle v. Wilhelm Warehouse Co.*, 2 Or App 533, 463 P2d 875, 470 P2d 386 (1970), and *Hannan v. Good Samaritan Hospital*, 4 Or App 178, 471 P2d 831, 91 Adv Sh 903, 476 P2d 931 (1970), Sup Ct *review denied* (1971).

The circuit judge heard testimony of Dr. Wayne Rogers, cardiologist, who was the deceased's physician.

Objection was made to this procedure because Dr. Rogers' testimony was obtainable before the hearing officer. The statute requires the circuit judge to hear the appeal "on the entire record forwarded by the board." Our review of Dr. Rogers' testimony, and his report which was received by the hearing officer, shows that the testimony was obtainable at the time of the hearing. Further, the circuit judge made no findings as to its availability at the time of the hearing. It was error to hear and consider it in the circuit court proceeding. *Beagle v. Wilhelm Warehouse Co.,* supra. The circuit court had the entire record before it, and Dr. Rogers' report concerning the illness and death which had been successively reviewed by the hearing officer and the Board was in the record. Hearing Dr. Rogers' testimony, in addition to reviewing his written report, did not cause the circuit court to change the successive decisions of the hearing officer and the Board. Plaintiff contends that we should consider Dr. Rogers' testimony as well as his report. For the reasons stated in *Beagle* we cannot do so.

When the matter was before the Board, plaintiff's attorney petitioned to remand the case to the hearing officer to take Dr. Rogers' testimony, as the Board is authorized to do under ORS 656.295(5). The attorney's affidavit which accompanied this petition pointed out that defendants' medical experts had based their testimony before the hearing officer in part upon an erroneous assumption that enzyme studies had been made. The affidavit stated that if Dr. Rogers were given the opportunity to testify, he would say the enzyme studies had not been made, the electrocardiograms performed the day of the accident differed from previous ones (which appears to be contrary to what

Dr. Rogers said in his report received in evidence), and that the pathological findings of the autopsy were consistent with a myocardial infarction on the day of the accident. The record and transcript we have show that these matters were not adequately covered in Dr. Rogers' report which was received, although the evidence was obtainable at the time of the hearing.

The petition was not granted, but the Board, in response to the petition, had the hearing officer get additional reports from defendants' two experts. These reports said only that the absence of the enzyme studies would not change their respective opinions. The plaintiff asserts that under the circumstances she should have been allowed cross-examination of the experts on this point, and that she was entitled to the additional testimony on the other subjects.

When the review came before the circuit court, it was proposed that the judge hear Dr. Rogers under authority of ORS 656.298(6), quoted above. The judge said:

> "* * * [T]he Court has the authority to remand, so, if I remanded it and then they took Dr. Rogers' testimony and then I would read his testimony up here, it would be the same as listening to it up here. And so I think you're saving one step * * *."

He heard Dr. Rogers' testimony, and, under *Beagle*, doing so was error.

In order to explain our conclusion in this appeal, it is necessary to review the facts.

Deceased had knowledge of some heart disease as early as 1930. In July 1966, when deceased was 66

years of age, Dr. Wayne R. Rogers, a cardiologist, examined and treated him. His diagnosis at that time was that the deceased had a significant aortic valve obstruction and significant narrowing of particularly the two branches of the left main coronary artery. After consultation with a heart surgeon, Dr. Albert Starr, it was indicated that a surgical aortic valve replacement should be done. Deceased did not have the surgery. Dr. Rogers' report concluded:

> "The outlook without surgery is rather indefinite but it is possible that on conservative management he might continue more or less in his present state for a few years."

After this examination the deceased worked a few days a month as an extra helper for the defendant, Beaverton Auto Parts, and when at such work on August 9, 1967, he was engaged in unscrewing a bearing from a shaft with a 12″ wrench when he felt chest pain and ceased work. The evidence was conflicting— some of it indicating that the exertion was mild, and other that it was vigorous. The deceased immediately returned to Dr. Rogers as an emergency patient. Dr. Rogers' report said:

> "* * * The physical and electrocardiographic findings were not significantly changed and so I feared that he had sprained his chest and advised him to rest at home and avoid such activities in the future. He did rest at home but collapsed and died about 6:30 AM 8/14/67.

> "Autopsy at St. Vincent Hospital by Dr. Oyama confirmed all of the diagnoses listed above and showed in addition that there was an acute lateral myocardial infarction, which I believe was brought on by the vigorous pulling on the wrench of 8/9/67 and that this had ruptured causing the sudden death 8/14/67."

Dr. A. A. Oyama, pathologist, performed an autopsy. As a defendants' witness before the hearing officer, he was positive that the myocardial infarction which precipitated the final heart rupture occurred 10 to 14 days previous to the death. He based this on his study of the progression of healing indications in the tissues at the place of the infarction. He disagreed with Dr. Rogers' conclusion that the use of the wrench five days before the death was a material contributing cause of the death. Dr. Rogers examined the heart at the time of autopsy. His conclusions and those of Dr. Oyama are in sharp conflict. Dr. D. W. Sutherland, cardiologist, was a defendants' witness. On the history of the case and a study of the exhibits, his conclusions and opinion coincided with those of Dr. Oyama. As already noted, they were under the erroneous impression that enzyme studies had been made by Dr. Rogers, but in the later reports obtained pursuant to the Board's order, said that the fact such studies had not been made would not change their opinions.

In *Coday v. Willamette Tug and Barge*, supra, a heart disease case, the court said some jurisdictions require a claimant in such a case to show that he exerted unusual strain in carrying out his job, but it said:

> "* * * We have previously set a less rigid standard recognizing that the claimant's usual exertion in his employment is enough to establish the necessary legal causal connection." 250 Or at 48.

The question of medical causation still remains, and under the present law, "* * * we examine the record de novo as triers of fact and are free * * * to choose which medical hypothesis is correct * * *." 250 Or at 49.

In *Clayton v. Compensation Department*, 253 Or 397, 404-5, 454 P2d 628 (1969), the court said:

"\* \* \* [I]f a particular heart attack is looked at alone and not as a part of the statistical sample it is difficult, indeed impossible, to say that the attack was caused by any one factor such as exertion or stress. The most that could be said in such a case is that the exertion, stress or any other single factor was a *possible* cause. The fact that the cause can be described only as a possibility when the heart attack is viewed as an isolated case does not render invalid the inference of probability based upon the generality of cases."

The holdings of these and other heart attack cases are summarized in *Mayes v. Compensation Dept.*, 1 Or App 234, 461 P2d 841 (1969).

In *Coday* and *Clayton* the questions of legal and medical causation are separated and in each the final result depends upon the fact trier's determination of the question of medical causation on the evidence which it has heard. The court observes in this regard:

"Because medical opinion on the effect of exertion and stress in heart attack cases rests upon such limited scientific knowledge there is reason to question the fairness of our present system of determining the issue of medical causation in these cases. However, until the legislature provides a more effective method of dealing with the heart attack cases under workmen's compensation we see no other way of solving the problem."[1] *Clayton v. Compensation Department*, 253 Or at 407.

We have said we cannot consider Dr. Rogers' oral testimony and the circuit court should not have re-

---

[1] In this connection, we call attention to the Comment, Problems and Suggested Solutions to Cardiovascular Cases in the Workman's Compensation Field, 6 Will L Journal 95, 96 (1970).

ceived it. However, even though its consideration by the circuit court did not cause that court to change the Board's decision, in it Dr. Rogers has stated some reasons for his opinion that give us pause. Dr. Rogers in his testimony related observations upon which he opined a medical hypothesis that appeared to refute the hypothesis advanced by Drs. Oyama and Sutherland.

We believe that the testimony of Dr. Rogers should be considered if plaintiff is to have the full consideration contemplated by the law. The act prevents us from considering it in the present state of the record.

Although regrettable delay is involved, pursuant to ORS 656.301 we remand the case to the circuit court, with instructions to remand it to the hearing officer for taking more testimony. If, on the remand to the hearing officer, more evidence than the testimony of Dr. Rogers is needed to explore the questions of medical causation involved, it may be properly received.

Remanded with instructions.