Argued November 24, reversed and remanded with instructions
December 23, 1970, petition for rehearing denied January 26,
petition for review denied March 16, 1971

SVATOS ET AL, *Appellants, v.* PACIFIC NORTH-
WEST BELL TELEPHONE COMPANY,
*Respondent.*
478 P2d 648

*Richard C. Bemis*, Portland, argued the cause for
appellants. With him on the brief were Seitz, Whipple,
Bemis & Breathouwer and Fred A. Granata, Portland.

*Lloyd G. Hammel, Jr.,* Portland, argued the cause and filed the brief for respondent.

Before SCHWAB, Chief Judge, and FOLEY and FORT, Judges.

FORT, J.

Albert L. Svatos was 45 years of age at the time of his death on October 2, 1968. At that time he had been employed as a telephone installer for 22 years by Pacific Northwest Bell Telephone Company. He was six feet one inches tall and weighed approximately 215 pounds.

The decedent's prior history revealed that in January 1963, he suffered an acute heart attack in the form of a myocardial infarction. After a period of recuperation he returned to work on March 26, 1963, but on a restricted basis, subject to certain work limitations, such as not to climb telephone poles. Occasional anginal symptoms occurred thereafter until April 24, 1967, but from that time until his death on October 2, 1968, he had no cardiac symptoms. He was a thoroughly experienced, competent worker.

On October 2, 1968, the decedent was dispatched alone on a job. He was given a service order instructing him to install a wall telephone in the operating room area at the Veterans Administration Hospital in Portland, Oregon. At approximately 1:30 p.m., the decedent arrived at the location of the proposed installation. There he learned for the first time that it was necessary to do part of the work in a crawl space area located above both the false ceiling and the actual ceiling of the operating room area. His employer was also unaware of this requirement.

In order to gain entrance to the area above the ceiling it was necessary for Svatos to climb up into and through holes cut in both the false and the permanent ceilings into a crawl space area above the latter. The crawl area was described by witnesses as approximately three and one-half feet high and congested with piping, wiring, ventilation ducts, support wires and a small concrete wall. Svatos located an eight-foot ladder, then already in place for use by an employe of the Veterans Administration Hospital, who had preceded him up the ladder into the crawl space area. Mr. Svatos climbed to the top rung and raised himself into the crawl space area. To reach the crawl space it was necessary first to pass through the false ceiling which was suspended one and one-half feet below the true ceiling. The top of the ladder was one foot below the hole in the false ceiling. The permanent ceiling was suspended three and one-half feet from and below the roof by support wires and two and one-half feet above the top of the ladder. Thus it was necessary for the decedent to raise himself with the aid of piping in the crawl area from the top of the ladder into the crawl space. He did so and, with the use of a flashlight which he carried, began crawling on his hands and knees through the semidark, confined and congested crawl space area.

Shortly after this, and before he had completed his work, he complained of pains in his chest, said, "I think I will get out of here," and crawled back to the opening. He lowered himself downward through the crawl space to the top of the ladder. He descended it with his equipment. Not long thereafter he was discovered breathing very heavily on his hands and knees by another hospital employe. Medical assistance was summoned. It was discovered that his heart was in a

state of acute ventricular fibrillation. He did not respond to emergency treatment and soon thereafter expired.

The death certificate filed following an autopsy stated the death was caused by atherosclerotic occlusions of the coronary arteries of the heart.

The claim was rejected by the defendant, a self-insurer, on the ground "the death did not arise out of Mr. Svatos' employment." On appeal the hearing officer, having heard the evidence including that of five doctors, who were not in agreement, found the death arose out of and in the course of his employment. On appeal by the defendant, the board in a two-to-one decision reversed.

We note that the order forthrightly states:

"(Note: Mr. Redman, in participating in this review, notes his former association with the employer and joins the review reluctantly but due to the necessity of arriving at a majority decision)."

No objection to Mr. Redman's participation is here raised. We do not therefore consider whether the law requires a majority opinion in every case nor whether the reason given is sufficient to support his participation.

On appeal by plaintiff the circuit court affirmed the order of the board on the ground decedent's work activity was not a material factor contributing to his death. No additional evidence was offered there.

In this case, as in heart cases generally, the basic problem is one of causation. 1A Larson, Workmen's Compensation Law 622.20, § 38.83. The author states:

"The beginning point is the recognition of the

fact that, as shown in the two preceding subsections, the essence of the problem is causation. The fact that an increasing number of jurisdictions accept this beginning point is a step in the right direction, but there is one additional preliminary step which is indispensable to an orderly analysis. That step is the breaking down of the causation question into its two parts: the legal and the medical.

"Under the legal test, the law must define what kind of exertion satisfies the test of 'arising out of the employment.'

"Under the medical test, the doctors must say whether the exertion (having been held legally sufficient to support compensation) in fact caused this collapse."

This division of the problem of causation into the two basic components of legal causation and medical causation has been recognized and approved in Oregon. In *Coday v. Willamette Tug & Barge,* 250 Or 39, 47, 440 P2d 224 (1968), the Supreme Court said:

"* * * The first question is whether there is any evidence that plaintiff exerted himself in carrying out his job. This is a question of legal causation. The second question is whether the exertion was a material contributing factor in producing the heart attack. This is a question of medical causation."

See also *Clayton v. Compensation Department,* 253 Or 397, 454 P2d 628 (1969); *Sahnow v. Fireman's Fund Ins.,* 3 Or App 164, 470 P2d 378 (1970), 93 Adv Sh 1459, — Or —, — P2d — (1971); *Mayes v. Compensation Dept.,* 1 Or App 234, 461 P2d 841 (1969); *Fagaly v. State Acc. Ins. Fund,* 3 Or App 270, 471 P2d 441, Sup Ct *review denied* (1970).

In *Fagaly,* decided subsequent to the judgment

challenged here, we considered at length the rules applicable to this particular type of case. It remains only to apply them.

## LEGAL CAUSATION

We must first consider whether legal causation is established. In determining its existence we note again the rule in Oregon is that usual exertion in the claimant's employment can be sufficient to establish legal causation. *Sahnow v. Fireman's Fund Ins.*, supra; *Coday v. Willamette Tug & Barge*, supra; *Fagaly v. State Acc. Ins. Fund*, supra. We do not therefore find it necessary to decide whether in this case for this claimant his exertion was unusual, although there is substantial evidence so indicating.

At the trial the defendant admitted legal causation, but since this is a de novo hearing, challenges it in this court. As in *Fagaly*, the decedent here also comes within the personal risk group, and for the same reason—"a previously weakened or diseased heart." In *Fagaly*, we said:

> "Thus the test is whether the 'employment contribution takes the form of an exertion greater than that of non-employment life.' The question then is whether the stress and strain (i.e., the 'exertion') attributable solely to his work was not only different from but substantially greater than the stress and strain of non-employment life." 3 Or App at 278.

We think it was clearly established here that decedent's work exertion at the time of the onset of the fatal attack was substantially greater than the normal exertion of his nonemployment life. We thus conclude that the necessary legal causation is established here.

## MEDICAL CAUSATION

In *Mayes v. Compensation Dept.*, supra, we held:

"Where medical science has found a probable causal relationship for the general group of which claimant's case has been demonstrated to be one, probable legal cause is established for the particular case then being litigated." 1 Or App at 237.

The doctors here differed as to whether claimant died as a result of coronary insufficiency unrelated to his work exertion and itself leading to the acute ventricular arrhythmia, as the employer contends, or whether while death resulted from the ventricular arrhythmia, the latter was induced by an acute myocardial infarct, itself resulting from decedent's work exertion, as the claimant contends.

In 1A Gordy-Gray, Attorneys' Textbook of Medicine 30-55, § 30.95 (3d ed 1970), we learn:

"(4) *Ventricular fibrillation.* This relatively rare arrhythmia *which most often is associated with acute myocardial infarction, especially one accompanied by a high degree of heart block,* is usually fatal within minutes unless treated immediately by means of some form of countershock. * * *" (Emphasis supplied.)

The same authors at page 30-34, § 30.80, state:

"*Myocardial Infarction.* When the blood supply to any part of the myocardium is completely cut off, that part dies (undergoes ischemic necrosis). The area so affected is said to be infarcted. This condition may be caused by any number of diseases, although coronary atherosclerosis is the most frequent cause."

It is undisputed here that the decedent was suffering from an advanced condition of arteriosclero-

sis, which was widespread throughout his coronary arteries. The function of the coronary arteries, of course, is to carry the blood which supplies oxygen and food to the fibers comprising the heart muscle.

Thus strain or exertion which places substantial added burdens or demands upon any part of the body's musculature creates a need for those muscles to receive additional oxygen and nourishment. These in turn are supplied by the oxygenated blood reaching the affected muscle fibers in greater quantities. Since the blood is pumped throughout the body by the heart, itself the most important muscle in the body, the latter is subjected to increased strain and its muscle fibers too require added nourishment.

Dr. Brady, the pathologist who performed the autopsy on the decedent, including cross-sections of the heart, stated that the particular activity Mr. Svatos was then engaged in "could create increased demand by the heart for oxygenated blood, a demand beyond his coronary arteries to supply at that time."

He also said:

"A   The timing is the crucial point here; we have got the man doing the activity, and we have him having chest pain and dying while he is doing that activity.

"Q   So you would agree that the activity was reasonably probable the cause of that attack which ultimately produced his death?

"A   I think it was reasonably related; I will put it that way."

Accordingly, we find that there was medical causation.

This case again underlines the statement of the

Supreme Court in *Clayton v. Compensation Department,* supra:

> "Because medical opinion on the effect of exertion and stress in heart attack cases rests upon such limited scientific knowledge there is reason to question the fairness of our present system of determining the issue of medical causation in these cases. However, until the legislature provides a more effective method of dealing with the heart attack cases under workmen's compensation we see no other way of solving the problem." 253 Or at 407.[①]

The judgment is reversed and remanded with instructions to respondent to accept the claim.

---

[①] See also: Roberts, *Problems and Suggested Solutions to the Cardiovascular Cases in the Workmen's Compensation Field,* 6 Will L J 95 (1970); McNiece, HEART DISEASE AND THE LAW, chs 11-18 (1961).