Argued January 21, re-argued May 24, reversed June 17, 1971

ANDERSON, *Appellant*, *v.* STATE ACCIDENT
INSURANCE FUND, *Respondent*.

485 P2d 1236

*Robert H. Grant,* Medford, argued and reargued
the cause for appellant. With him on the briefs were
Grant & Ferguson, Medford.

*Al J. Laue,* Assistant Attorney General, Salem,
argued and reargued the cause for respondent. With

him on the brief were Lee Johnson, Attorney General, and Jacob B. Tanzer, Solicitor General, Salem.

FOLEY, J.

Claimant's husband died as the result of a heart attack. The hearing officer found the attack and the death to have been work related and compensable under Workmen's Compensation Law. The Workmen's Compensation Board reversed the hearing officer and the circuit court agreed with the Board. Claimant widow appeals to this court.

Decedent was a 56-year-old log truck driver. He had sustained a compensable heart attack previously, in June of 1961. That claim was closed in 1964. Thereafter he ran a service station for about a year, drove a fuel truck for approximately a year and then beginning in May 1967, became a log truck driver. He worked as such until Monday, July 8, 1968.

The preceding day, Sunday, decedent and his wife after going to church spent the day about their home, watching television and retired at 10:30 or 11 p.m. The wife testified that decedent made no complaint of physical discomfort of any kind. They arose at their regular early hour, approximately 4:30 a.m., the morning of the 8th. Decedent had his usual breakfast and left for work. He made no complaints and appeared to be his normal self.

Approximately three hours after leaving home, and just after attempting to throw a chain and hook (called gut wrapper) over his loaded log truck, he was observed by a fellow truck driver to be in physical distress. Decedent drove the 25 miles to the mill and

thereafter was taken to Dr. Cleary in Trail, Oregon, who testified that decedent related that:

"* * * [W]hile driving a logging truck he developed a sudden severe attack of chest pain associated with profuse sweating; pain radiating to the back and both arms. He told me that he had a sense of feeling of weakness and some chest pain during the night. The patient was advised not to drive his logging truck home and to see his doctor upon arrival at home. * * *"

Decedent then proceeded to his treating doctor in Medford, Dr. Vorheis, who hospitalized him immediately under intensive care. He diagnosed decedent's condition as ventricular tachycardia and probable coronary occlusion with myocardial infarction. He related this condition to the decedent's work activity and recounted the history given by decedent

"* * * [July 8, 1968] was bringing in a load of logs and became ill, nausea and pressure type pain upper epigastrium followed by pain across upper shoulders and base of neck and back."

Dr. Vorheis did not indicate that decedent suffered any pain or symptoms the previous night. Furthermore, his report of July 22, 1968, contains the following question and answer: Is condition requiring treatment the result of this injury? *Yes.* He confirmed this conclusion in a letter of August 28, 1968, to the Director of the Claims Division of the State Compensation Department (now the State Accident Insurance Fund).①

Two other doctors were called as witnesses and

---

① Dr. Vorheis, the treating doctor, was not examined as a witness. At the conclusion of taking testimony, the hearing was continued by the hearing officer for seven days to allow the defendant Department to decide whether or not to cross-examine Dr. Vorheis on his letter reports. The option was not exercised and Dr. Vorheis was not cross-examined.

gave testimony. Dr. Christian Hald, a general practitioner of 16 years' experience, testified unequivocally in response to hypothetical questions that in his opinion the most probable cause of decedent's death was a myocardial infarct or a coronary attack that occurred on the morning of July 8, when decedent was involved in throwing the chain over the logs. When asked about decedent's reported statement to Dr. Cleary that he had experienced a "feeling of weakness and some chest pain during the night" before the incident with the log chain, Dr. Hald stated that decedent, having previously had an acute coronary, would have been more "chest and heart conscious" than others and if he, in fact, had cardiac chest pains during the night he would not have eaten the reported breakfast and would not have gone to work. To quote Dr. Hald:

> "Well, there are several assumptions one can make. Obviously chest pain can, in the light of argument here, it might mean that he had a coronary the night before. It might mean he had a gas bubble. It might mean he had pleurisy. Or it might mean he bumped himself on the side of the bed. I think to be perfectly candid with the thing, if you just say the man had chest pain last night, you really don't know what that particular term means as such. You can assume that maybe it meant that he had some little symptoms of a heart attack the night before. If we were to go that route then, and I've asked myself whether this might be the thing, then I would say, well, if that's so, how did the man get up and eat all this breakfast he's talking about and how did he, reportedly, appear all right for, from—I can't remember whether you said anything about when the man gets up—but I know enough about loggers, they have to get up pretty early to get up where they work. So that if the man had a coronary the night before, it seems logical to me that there should have been some symptoms

in a closer time relationship to his ultimate break-down, let's say, than there was and so I would assume while the man had chest pain, based on the hypothetical, I cannot honestly relate them specifically to a cardiac disease problem."

Dr. Ray L. Casterline, certified as a specialist in internal medicine, testified in response to a hypothetical question that in his opinion the work performed by decedent on July 8, 1968, was not a material contributing factor in the development of decedent's myocardial infarction. He based his answer on decedent's previous history of heart disease and the report of Dr. Cleary that decedent mentioned having had chest pain during the night of July 7. He concluded that the infarct occurred that night.

The hearing officer, after Dr. Casterline had responded to direct and cross-examination, redirect twice and recross twice, himself asked the doctor a number of questions and finally said:

"I've asked the questions and you've given the answers and I'm no better off than I was."

and later:

"Q   [By hearing officer] Then you understood we weren't just talking about driving a log truck but also throwing a chain that weighed ten to fifteen pounds over a stack of logs nine or ten feet high?

"A   That's not really very hard work. I throw chains over things. Fifteen pounds of chain, if you get it going, it's velocity. If I may interject a statement here, the classification of work is, I believe, if I may introduce this source as a basis for this, the classification of work is classified by the Department of Work as an individual doing sedentary work if he handles ten pounds, extremely light work when he handles twenty pounds.

"Q But that's carrying.

"A Carrying from place to place. But when you have to have chains, the velocity—

"Q Of course, you are dragging a cable with it, too. I don't know how much the total weight would be, but this would have nothing to do with causing his infarct.

"A Causing his infarct?

"Q Yes.

"A In this particular case I believe the infarct occurred the night before."

Dr. Casterline in his testimony recognized the treating doctor, Dr. Vorheis, though not certified as an internist, as qualified by equal experience with himself in treatment of heart diseases:

"In years of experience, he and I are compatriots. We have virtually the same experience."

He stated that their offices were adjacent and they frequently consulted.

This court is required to review this matter de novo. *Hannan v. Good Samaritan Hosp.*, 4 Or App 178, 471 P2d 831, 476 P2d 931 (1970), Sup Ct *review denied* (1971). There is no question of legal causation between decedent's employment and his heart attack. See *Clayton v. Compensation Department*, 253 Or 397, 454 P2d 628 (1969). Defendant Fund concedes, citing *Fagaly*, infra, that there was sufficient exertion involved in decedent's attempting to throw the "gut wrapper" over the logs to constitute the work-related exertion necessary to establish legal causation.

The question of medical causation is more bothersome. As we said in *Mayes v. Compensation Dept.*, 1 Or App 234, 461 P2d 841 (1969):

"It must then be determined whether the work-

related stresses or exertion were a material contributing factor in producing the heart attack. This is a question of medical causation. In any given case this is a question of fact." 1 Or App at 237.

A summary of the medical evidence discloses the following: Dr. Vorheis, the treating doctor who had treated decedent for his 1961 heart attack and thereafter until decedent's death in October 1968, concluded that the July 8, 1968, heart attack was related to the work activity in which decedent was engaged at the time; Dr. Casterline, who recognized Dr. Vorheis as qualified by equal experience with himself in the treatment of heart diseases, concluded hypothetically that the heart attack was not work related; Dr. Hald, the general practitioner, concluded hypothetically that the heart attack was work related. Attaching some significance to the hearing officer's findings, *Ryf v. Hoffman Construction Co.,* 254 Or 624, 459 P2d 991 (1969), and the treating physician's report, *Lucke v. Compensation Dept.,* 254 Or 439, 461 P2d 269 (1969), we conclude with the hearing officer that the evidence preponderates that decedent's heart attack of July 8, 1968, and subsequent death in October 1968, were compensable under the provisions of the Workmen's Compensation Law. See *Clayton v. Compensation Department,* supra; *Mayes v. Compensation Dept.,* supra; *Coday v. Willamette Tug & Barge,* 250 Or 39, 440 P2d 224 (1968).

Arthur Larson in an article, *The "Heart Cases" in Workmen's Compensation: An Analysis and Suggested Solution,* 65 Mich L Rev 441, 470 (1967), suggests a refinement in determining legal causation in heart attack cases. (Medical causation remains unchanged.) He suggests that where the workman has prior heart disease (a "personal risk factor"), legal

causation should not be found unless "the employment contribution takes the form of an exertion greater than that of non-employment life." This court appears to have adopted this refinement in *Fagaly v. State Acc. Ins. Fund,* 3 Or App 270, 471 P2d 441, Sup Ct *review denied* (1970), and *Svatos v. Pac. N.W. Bell Tel. Co.,* 4 Or App 396, 478 P2d 648 (1970), Sup Ct *review denied* (1971). However, this is at odds with the legal causation test set forth by the Oregon Supreme Court in *Coday* wherein the court said:

> "In some jurisdictions that standard is described by the rule requiring claimant to show that he exerted unusual strain in carrying out his job. We have previously set a less rigid standard *recognizing that the claimant's usual exertion in his employment is enough to establish the necessary legal causal connection.* * * *" (Emphasis supplied.) 250 Or at 48.

This rule has not been changed although there was opportunity to do so in *Grandell v. Roseburg Lbr. Co.,* 251 Or 88, 444 P2d 944 (1968), and *Lorentzen v. Compensation Department,* 251 Or 92, 444 P2d 946 (1968). The adoption of Professor Larson's suggested refinement was not necessary in *Fagaly* and *Svatos* as application of either test would have reached the same result on legal causation. Only insofar as they adopted the Larson "personal risk" factor as applied to legal causation, those cases are overruled.

Reversed.

FORT, J., specially concurring.

I concur in the majority opinion except for that portion wherein the court expressly abandons the position taken by this court in *Fagaly v. State Acc. Ins. Fund,* 3 Or App 270, 471 P2d 441, Sup Ct *review*

*denied* (1970), and *Svatos v. Pac. N.W. Bell Tel. Co.,*
4 Or App 396, 478 P2d 648 (1970), Sup Ct *review de-
nied* (1971), adopting the personal risk factor
doctrine enunciated by Larson[1] on the ground that
"this is at odds with the legal causation test set forth
by the Oregon Supreme Court in *Coday* [Coday v. Wil-
lamette Tug & Barge, 250 Or 39, 440 P2d 224 (1968)]."

In *Fagaly,* we discussed the problem at length and
said:

"Larson, in his article, points out:

" '* * * [T]he causation issue can be solved by
invoking the distinction which exists in compensa-
tion law between neutral-risk situations (where
there is no obvious personal or employment element
contributing to the risk) and personal-risk situa-
ations (where a personal risk contributes to the in-
jury, although perhaps in a relatively small degree).
* * *

" 'In heart cases, the effect of applying this dis-
tinction between neutral-risk and personal-risk sit-
uations would be clear. If there is some personal
causal contribution *in the form of a previously
weakened or diseased heart,* a heart attack would
be compensable only if the employment contribution
takes the form of an exertion greater than that of
non-employment life. Note that the comparison is
not with *this employee's* usual exertion *in his em-
ployment,* but rather with the exertions present in
the normal *non-employment* life of this or any other
person. * * *' (Italics in original.) * * *." 3 Or
at 277.

We reiterated this in *Svatos.*

The personal risk factor doctrine in heart cases

[1] A. Larson, *The "Heart Cases" in Workmen's Compensation:
An Analysis and Suggested Solution,* 65 Mich L Rev 441, 470
(1967).

applies only where the decedent had "a previously weakened or diseased heart," not in a case where there has been no such prior weakness or disease. It is concerned with legal causation, not medical.

The court does not overrule *Fagaly* and *Svatos* because it has concluded that the personal risk factor doctrine is unsound or that the reasoning expressed therein is faulty. It does so solely because it concludes those cases are "at odds" with *Coday*.

Whether, as the majority contends, this doctrine is "at odds" with *Coday*, requires an examination of the latter.

*Coday* involved a workman who sustained and survived an on-the-job heart attack. The court there did not discuss the personal risk factor doctrine at all. On its facts no reason in my view appears why it should have. From their examination it seems abundantly clear that the work Coday was doing involved exertion greater than in nonemployment life. The court simply held that legal causation existed. It then considered the question of medical causation, found that it was not established, and denied recovery.

Nor can I conclude that the Supreme Court in *Olson v. State Ind. Acc. Com.*, 222 Or 407, 352 P2d 1096 (1960); *Grandell v. Roseburg Lbr. Co.*, 251 Or 88, 444 P2d 944 (1968); *Lorentzen v. Compensation Department*, 251 Or 92, 444 P2d 946 (1968), or *Clayton v. Compensation Department*, 253 Or 397, 454 P2d 628 (1969), adopted or rejected the personal risk factor doctrine. In none of them was it necessary to discuss it, and in none of them did it do so.

Certainly in my view it is at least as reasonable to assume since the Supreme Court both in *Fagaly* and *Svatos* considered and denied a petition for review,

that it did not consider either opinion "at odds" with *Coday,* as it is to assume, as the majority does here, that adoption by us in *Fagaly* and *Svatos* of the personal risk factor doctrine was contrary to the holding in *Coday,* which neither discussed nor required its consideration.

I agree, in short, that the Supreme Court has not adopted the personal risk factor doctrine, but I do not agree that it has rejected it either directly or by necessary implication. Under such circumstances this court has the right, and indeed the duty, to take its own position.

SCHWAB, C. J., dissenting.

I agree with the opinion of the majority in so far as it sets forth the legal principles by which we must determine whether or not a heart attack is compensable. However, I believe that under the facts of this case the claimant has failed in her burden of proof.

On the day of the heart attack, Monday, July 8, the deceased told the first doctor he saw, Dr. Cleary, that "* * * [W]hile driving a logging truck he developed a sudden severe attack of chest pain * * *," and that during the previous night he had "* * * some chest pain." Apparently the deceased, in giving a history to the next doctor he saw, Dr. Vorheis, did not mention the pain he had experienced the previous night, but told the doctor only that he became ill while "bringing in a load of logs." Based on this testimony, Dr. Vorheis connected the decedent's heart attack with his work activity.

I do not believe that Dr. Hald's testimony is worthy of much weight. He says that in his opinion the heart attack was caused when the decedent was attempting to throw a chain over a load of logs at the

"landing." There is nothing in the record to show that the attempt to throw the chain immediately preceded the onset of the decedent's heart attack. The only testimony is that when he was observed shortly after he attempted it, he was obviously ill. For all the record discloses, he might have been suffering from the heart attack long before he attempted it. Further, Dr. Hald says that since the decedent had a previous heart attack he would not have gone to work if he had suffered serious chest pains the previous night. The uncontradicted testimony is that regardless of when the decedent first suffered the onset of a heart attack he was seriously ill either before, at the time, or just after he attempted to throw the chain over the logs at the landing. Yet, he then proceeded to drive the loaded log truck for many miles before going to see a doctor.

I find nothing in the record by which we can do anything other than speculate as to when the ultimately fatal onset began or what caused it.

For the foregoing reasons I respectfully dissent.