Argued and submitted November 24, reversed and
remanded with instructions December 22, 1980

In the Matter of the Compensation of
Irene Penifold, Claimant.

PENIFOLD,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(No. 78-9826, CA 18124)

621 P2d 646

Kenneth D. Peterson, Jr., Eugene, argued the cause for petitioner. On the brief was Evohl F. Malagon, Eugene.

Richard D. Barber, Jr., Certified Law Student, Salem, argued the cause for respondent. On the brief were K. R. Maloney, General Counsel, James A. Blevins, Chief Trial Counsel, and Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem.

Before Richardson, Presiding Judge, and Thornton and Buttler, Judges.

RICHARDSON, P.J.

## RICHARDSON, P.J.

In this workers' compensation case claimant sought benefits under ORS 656.245(1)[1] for the "aggravation" of her accepted compensable occupational disease claim, penalties and attorney's fees[2] for the failure of the State Accident Insurance Fund (SAIF) to accept or deny her claim within the period allowed by statute,[3] and an extent of disability determination. The referee found that she had established a compensable claim, was entitled to additional medical benefits under ORS 656.245(1), penalties and attorney's fees, and a permanent partial disability award. The Workers' Compensation Board (Board), after *de novo* review, reversed the referee's order in its entirety.

■■ Claimant twice petitioned the Board for reconsideration. Both times she requested that the Board either allow introduction of previously unobtained medical evidence directly bearing on the cause of her disability or remand the matter to the referee for his further consideration in light of the additional medical evidence. The

---

[1] ORS 656.245(1) provides:

"For every compensable injury, the direct responsibility employer or the State Accident Insurance Fund Corporation shall cause to be provided medical services for conditions resulting from the injury for such period as the nature of the injury or the process of the recovery requires, including such medical services as may be required after a determination of permanent disability. Such medical services shall include medical, surgical, hospital, nursing, ambulances and other related services, and drugs, medicine, crutches and prosthetic appliances, braces and supports and where necessary, physical restorative services."

[2] ORS 656.262(8), provides:

"If the corporation or direct responsibility employer or its insurer unreasonably delays or unreasonably refuses to pay compensation, or unreasonably delays acceptance or denial of a claim, the corporation or direct responsibility employer shall be liable for an additional amount up to 25 percent of the amounts then due plus any attorney fees which may be assessed under ORS 656.382."

[3] ORS 656.262(5), in pertinent part, provides:

"Written notice of acceptance or denial of the claim shall be furnished to the claimant by the corporation or direct responsibility employer within 60 days after the employer has notice or knowledge of the claim * * *."

Board denied claimant's requests in all respects,[4] and affirmed its order.

The sole question on appeal is whether we should reverse the Board's order and remand the matter to the referee pursuant to ORS 656.298(6) for further consideration in light of claimant's additional medical evidence.

Claimant commenced working for employer in 1969. In October, 1976, she was employed as a nurse's aide, which required her to bathe patients on a regular basis. As a part of this job, she wore rubber gloves and came in contact with detergent solutions and, in particular, a substance known as Septisoft. In late October, 1976, she developed a rash on both her hands and forearms. Her physician, Dr. Koch, diagnosed the condition as contact dermatitis. He opined that the condition arose from her duties at work. Claimant testified that Dr. Koch told her that contact with Septisoft was the specific cause. Dr. Koch, however, did not perform any tests, included in the record, that document the cause of her condition. Dr. Koch prescribed medication, and claimant remained away from work for one day. Claimant immediately filed a claim for compensation which was accepted by SAIF. In February, 1977, Dr. Koch concluded that she was medically stationary and would not suffer permanent disability. He did state, however, that the problem could reoccur. Thereafter, SAIF closed her claim with payment of one day's time loss.

Claimant continued to have problems and sought additional treatment. In April, 1977, she saw a dermatologist, Dr. Moyer, who diagnosed her symptoms as a form of

---

[4] The Board's review powers are contained in ORS 656.295(5), which provides:

"The review by the board shall be based upon the record submitted to it under subsection (3) of this section and such oral or written argument as it may receive. However, if the board determines that a case has been improperly, incompletely or otherwise insufficiently developed or heard by the referee, it may remand the case to the referee for further evidence taking, correction or other necessary action."

The Board had no power to consider any evidence not already included in the record. Its only statutory power was to remand the case to the referee for further evidence taking. Remand is a matter of discretion. *See Holmes v. SAIF*, 38 Or App 145, 589 P2d 1151 (1979); *Mansfield v. Caplener Bros.*, 3 Or App 448, 474 P2d 785 (1970). Since we review this case under our own statutory review powers, ORS 656.298(6), we need not decide whether the Board abused its discretion in this case.

dyshydrosis and chemical irritation. Dr. Moyer noted that the condition improved when claimant was away from work and worsened while she was at work. In September, 1978, the condition reoccurred and claimant again saw Dr. Moyer, who prescribed further medication but did not conduct any specific tests to determine the cause of the condition.[5] In November, 1978, claimant's employment was terminated due to the skin irritation. She subsequently gave SAIF notice of her "aggravation" claim and her claim for additional medical services. SAIF denied the claims by conduct, i.e., a de facto denial by failure to accept or deny the claims within the statutory time period.

In late February, 1979, claimant saw still another dermatologist, Dr. Rollins. He performed a series of patch tests which showed claimant's sensitivity to substances often found in cosmetics and handcreames as well as substances commonly found in rubber gloves. He did not perform a test with regard to claimant's sensitivity to Septisoft. Dr. Rollins diagnosed claimant's condition as chronic contact dermatitis with a secondary neurodermatitis. He felt the problem was aggravated by claimant's work activities as well as by contacts in her home. He later suggested claimant could return to work if she wore plastic gloves with cotton liners and avoided the allergens to which she was sensitive. Claimant did not return to her former employment and remained unemployed up to the time of the hearing.

The referee's decision was appealed to the Board by SAIF. After both parties had submitted briefs to the Board, SAIF referred claimant to Dr. Storrs, a dermatologist associated with the University of Oregon Health Sciences Center. Claimant saw Dr. Storrs on several occasions in late February and early March, 1980. In a letter dated April 4, 1980, Dr. Storrs opined that claimant had allergic contact dermatitis. She was patch tested on the substances previously tested by Dr. Rollins and, for the first time, on Septisoft. She had the same positive reactions as before

---

[5] Prior to claimant's visit with Dr. Moyer, she conducted her own "patch test" to determine her sensitivity to Septisoft. The method used by claimant was challenged by Dr. Moyer and we have drawn no conclusions from the claimed results.

and, in addition, a positive reaction to Septisoft. Dr. Storr's impression was that claimant was probably allergic to rubber gloves and the Septisoft antiseptic. She concluded there was a high likelihood that claimant's condition was work related but intended to test claimant further for reaction to specific Septisoft ingredients before reaching a final diagnosis. A copy of this letter was sent to SAIF. This report was not made available to either claimant's counsel or to the Board prior to the Board's order on review which was issued May 16, 1980.[6] The record indicates claimant first received a copy of the report on June 10, 1980, and brought the report to the Board's attention in her request for reconsideration dated June 18, 1980.

Dr. Storrs retested claimant on April 29, 1980, for sensitivity to the specific Septisoft ingredients. On May 9, 1980, she made the following remarks in a letter:

> "There is now no doubt in our minds that Mrs. Penifold's acute dermatitis, which occurred during the time that she was working at the Eugene Hospitals and Clinic as a nurse's aide, was directly associated with her use of rubber gloves and Septisoft liquid soap. We do, however, appreciate that she is basically an atopic person and expect that her hand dermatitis is long-lasting, largely because of this."

This letter report was sent to claimant's counsel but was not received until after the Board's order. Claimant included the report in her motion for reconsideration but, as noted previously, the Board denied her request.

■     ORS 656.298(6) sets forth this court's *de novo* review powers in workers' compensation cases. That subsection provides:

> "The review by the Court of Appeals shall be on the entire record forwarded by the board. *The court may remand the case to the referee for further evidence taking, correction or other necessary action.* However, the court may hear additional evidence concerning disability that was not obtainable at the time of the hearing. The court

---

[6] There is no indication in the record as to why this report was not made available to either claimant or the Board. Claimant alleges in her brief that the report was withheld due to the "tardy administration of correspondence by the carriers." We find no support in the record for this conclusion and decline to draw our own on the basis of the record before us.

may affirm, reverse, modify or supplement the order appealed from, and make such disposition of the case as the court determines to be appropriate." (Emphasis added.)

The issue before us is whether, under the particular circumstances of this case, we should remand this case to the referee for further consideration of claimant's claim in light of Dr. Storrs' reports.[7] We conclude that remand is proper. *Buster v. Chase Bag Co.,* 14 Or App 323, 513 P2d 504 (1973). *Hamilton v. SAIF,* 11 Or App 344, 501 P2d 1007 (1972), *rev den* (1973); *Sahnow v. Fireman's Fund Ins. Co.,* 3 Or App 164, 470 P2d 378 (1970), *aff'd* 260 Or 564, 491 P2d 997 (1971).

The record reveals that the evidence of whether claimant's employment was a material contributing factor to her continuing condition was in conflict. Dr. Koch was unequivocal that her initial problem was caused by her work. Dr. Moyer, who first saw claimant after her condition persisted, did not conduct any patch tests and gave no opinion as to the cause of claimant's condition. Dr. Rollins was the only dermatologist prior to the hearing to perform patch testing. He concluded that her condition was "aggravated and continued by the use of rubber gloves as well as other contactants," and was also "aggravated by contacts in her home."

The record indicates that claimant was exposed to rubber gloves at work and at home. The record also indicates that certain of her sensitivities were to substances not found at work. None of the medical reports provided to the referee, however, includes any testing for claimant's sensitivity to Septisoft. The lack of those tests resulted in an incompletely developed record before the referee.

■　The additional reports by Dr. Storrs, which claimant seeks to have considered, contain the only Septisoft

---

[7] Under ORS 656.298(6), our power to hear additional evidence concerning disability is limited to evidence "not obtainable at the time of the hearing." Here, the reports were not *available* to claimant at that time but were *"obtainable"* in the sense that she could have contacted Dr. Storrs at that time and sought results of the Septisoft patch tests. Therefore, we cannot consider the evidence ourselves. *See Brenner v. Industrial Indemnity Co.,* 30 Or App 69, 566 P2d 530 (1977); *Petersen v. Travelers Insurance.,* 21 Or App 637, 536 P2d 448 (1975); *Sahnow v. Fireman's Fund Ins. Co.,* 3 Or App 164, 470 P2d 378 (1970), *aff'd* 260 Or 564, 491 P2d 997 (1971); *Mansfield v. Caplener, supra.*

tests. The reports conclude that claimant's condition was caused by her use of rubber gloves *and* exposure to Septisoft solution. They bear directly on the issue of compensability of claimant's condition. They contain the only tests on a substance claimant came into contact with only at work. Given the fact that both sides had briefed the issues for the Board before Dr. Storrs' reports became available, and that the findings became known prior to the Board's decision, but were not made available to the Board, or even received by claimant until after the Board's decision, we conclude that they should be considered as part of the record. Under these circumstances, claimant has shown good cause and a compelling reason why we should remand the matter to the referee for further consideration. Therefore, the Board's order is reversed, and the matter is remanded to the referee pursuant to ORS 656.298(6) for further consideration in light of claimant's additional medical evidence.

Reversed and remanded with instructions.