Argued and submitted December 4, 1981, affirmed April 12, 1982

In the Matter of the Compensation of
Cindy Gallea, Claimant.

GALLEA,
*Petitioner,*

*v.*

WILLAMETTE INDUSTRIES,
*Respondent.*

(WCB Case No. 80-07747, CA A21787)

643 P2d 390

Gerald Doblie, Portland, argued the cause for petitioner. On the brief were James L. Francesconi and Doblie, Francesconi & Welch, P.C., Portland.

Emil R. Berg, Portland, argued the cause for respondent. On the brief were Daryll E. Klein and Wolf, Griffith, Bittner, Abbott & Roberts, Portland.

Before Richardson, Presiding Judge, and Thornton and Van Hoomissen, Judges.

THORNTON, J.

Van Hoomissen, J., dissenting.

## THORNTON, J.

Claimant raises two issues in this workers' compensation case. She contends that she is entitled to an unscheduled award for permanent partial disability to her shoulder and that the Board erred in not considering an additional medical report and in not remanding her claim to the referee for consideration of the report. We affirm.

Claimant is 27 years of age. She was employed by Willamette Industries. In March of 1979, she first felt a "snap" in her right wrist while working on the "green chain."[1] Although she felt pain in her wrist and arm, she did not see a doctor for the problem until August, 1979, when she saw Dr. Crook. He advised her to perform only light duties at the mill.

Claimant's injury was diagnosed by a neurologist, Dr. Throop, as a carpal tunnel syndrome and on December 4, 1979, right carpal tunnel decompression surgery was performed by Dr. Crook. Claimant returned to work but was able to work only two months of fairly light duty. On January 30, 1980, she saw Dr. Crook complaining of diffuse pain and numbness in her entire right arm. Dr. Crook could not make positive orthopedic or neurological findings to support the complaints. She was re-examined by Dr. Throop in March, 1980. He concluded that claimant's symptoms were either functional in nature or due to an apparent compromise at the thoracic outlet region. He stated that the positive Adson's maneuver (a method of detecting thoracic outlet syndrome), the nature of the diffuse symptomotology and the electrical studies reflected a lesion at the brachioplexus level. Dr. Throop's report, however, failed to relate this condition specifically to claimant's March, 1979, injury.[2] After talking to Dr. Throop, Dr. Crook reported that:

> "Apparently the patient has electrical evidence of slowing in the area of the thoracic outlet on the right side which would explain her rather diffuse and at times bizarre symptoms. The symptoms, historically, appear to

---

[1] Working on the "green chain" involved pulling lumber off a moving chain and placing it in piles.

[2] The report did note that claimant stated that she had never had any relief from her right hand and forearm. Dr. Throop further noted that claimant related numbness and pain in her upper right arm after returning to work.

be exacerbated by her work activities at the mill and for this reason it has been elected to treat her with 6 weeks of relative inactivity. She will be reassessed at the end of that time."

Dr. Crook saw claimant again April 30, 1980, and reported that she continued to complain of considerable pain in her right shoulder despite the fact that she had not worked since she was last seen. He also reported a positive Adson's maneuver bilaterally at that time. He advised that consideration be given to vocational rehabilitation and felt that if claimant's symptoms continued to increase, a thoracic outlet decompression might be required.

On July 11, 1980, Dr. Crook reported claimant still complained of her right girdle, was tender over the thoracic outlet to a mild degree and displayed a diffuse decreased sensation in her right upper extremity. On July 23, 1980, he felt claimant was medically stationary, because her symptoms continued to be stable and she was not receiving diagnostic or therapeutic treatments.

A Determination Order on August 18, 1980, awarded claimant 5 percent for loss of use of her right forearm. On August 27, 1980, Dr. Crook again saw claimant who continued to complain of pain. At that time, she had a negative Adson's maneuver bilaterally. He believed claimant could do work that did not require strenuous or repetitive use of her upper extremities.

Claimant requested a hearing and testified that she continued to experience pain and discomfort from March, 1979, to the time of the hearing. She found household functions difficult to perform. She stated that although her wrist had improved, her arm sometimes feels frozen and numb and that she experiences sharp pain in her neck and shoulder. The referee awarded claimant 15 percent for unscheduled permanent partial disability to claimant's right shoulder equal to 48 degrees in addition to the earlier 7.5 degree Determination Order for the disability of her wrist. The Board affirmed the award for the wrist injury, but reversed the unscheduled shoulder award, finding that there was no medical evidence causally relating the shoulder condition to the wrist injury, establishing that the shoulder condition is permanent or establishing any impairment of wage earning capacity.

■ The burden is on claimant to establish by a preponderance of the evidence that the particular disability, specifically her right shoulder condition, was legally and medically caused by a compensable accident. *Edwards v. SAIF,* 30 Or App 21, 23, 566 P2d 189, *rev den* 279 Or 301 (1977). Proof of medical causation here required expert medical evidence establishing that the thoracic outlet syndrome was caused by a compensable accident. Neither Dr. Crook nor Dr. Throop stated that claimant's shoulder condition was caused by the March, 1979, incident, or by any other on-the-job injury. Dr. Crook's report that her "symptoms, historically, appear to be exacerbated by her work activities at the mill" does not establish that an on-the-job injury *caused* the thoracic outlet syndrome. We find that claimant has failed to establish that her thoracic outlet syndrome was caused by a compensable accident.

■ Claimant also assigns as error the Board's refusal to consider an additional medical report by Dr. Crook or to remand the claim to the referee for admission of the report. In the alternative, claimant requests that we consider the additional report. ORS 656.298(6). The report was in the form of a letter by Dr. Crook to claimant's attorney. In pertinent part, it stated:

> "The March 5, 1980 office note, which is also enclosed for your review, clearly demonstrates that the patient did indeed have a thoracic outlet syndrome. From a historical standpoint, I would conclude that the thoracic outlet syndrome probably was present to an increasing degree all along and in the absence of any other historical evidence to explain its existence, would conclude that it was a result of her industrial injury."

The report was apparently based on examinations conducted by Dr. Crook on October 30, 1979, and March 5, 1980. The letter was written by Dr. Crook on October 27, 1980, the date of the hearing, but was not received by claimant's attorney until a day or two after the hearing. No attempt was made to keep the record open for submission of the letter.[3] The first attempt to admit the letter was after employer requested Board review on December 5, 1980.

---

[3] Claimant's attorney stated in a letter to the Board on December 12, 1980, prior to the appeal, that when he received the letter he contacted employer's

The Board had no authority to consider this additional evidence not admitted at the hearing and not a part of the record. *Brown v. SAIF,* 51 Or App 389, 625 P2d 1351 (1981). Therefore, claimant's request that the Board admit the report was properly denied. Under ORS 656.295(5), the Board may remand a case to the referee for further evidence taking if the case has been improperly, incompletely or otherwise insufficiently developed. Because a report by Dr. Crook could have been available well in advance of the hearing, given the dates of the examination, and because it was based on examinations conducted by Dr. Crook months before the hearing, we cannot say that the Board abused its discretion under ORS 656.295(5) in refusing to remand the case to the referee.

Claimant requests, alternatively, that we consider the letter ourselves. For like reasons, we decline to do so. The report was "obtainable" under ORS 656.298(6) at the time of the hearing.[4] *See also Maumary v. Mayfair Markets,* 14 Or App 180, 183-84, 512 P2d 1370 (1973); *Mansfield v. Caplener Bros.,* 3 Or App 448, 452, 474 P2d 785 (1970).

Affirmed.

**VAN HOOMISSEN,** dissenting.

I respectfully dissent because in my view a legitimate claim is being denied here as a result of a misunderstanding between the attorneys. In a case such as this, where the Board has reversed the referee's order which

---

attorney. He contends that he did not attempt to introduce the report because employer's attorney asked that the report not be introduced until after the Opinion and Order for the reason that there might not be a need for the report if the referee found the shoulder claim compensable. Employer's attorney responded in a letter to the Board on December 29, 1980, that after hearing of the report, he told claimant's attorney that he would object to the admission of the report and that it would be necessary to take additional testimony if the report were admitted. He maintained that as a result of the conversation "claimant decided not to submit the medical report at this time, but advised that [claimant's counsel] might attempt to submit it later. I advised that I would have the same objection later as I had at that time * * *."

[4] Claimant does not request that we remand the case to the referee for further evidence taking. *See* ORS 656.298(6); *Penifold v. SAIF,* 49 Or App 1015, 621 P2d 646 (1980). Even if she had requested a remand, we find no compelling reason to do so. *Russell v. A & D Terminals,* 50 Or App 27, 621 P2d 1221 (1981).

granted claimant an unscheduled disability award for her right shoulder condition, all doubts should be resolved in favor of a full and complete resolution of the claim on its merits. The workers' compensation law is remedial in character and should be liberally construed to promote the beneficial results intended by the legislature. *Newell v. Taylor et al,* 212 Or 522, 321 P2d 294 (1958). Procedural technicalities should yield to the public policy implicit in the law. I would remand to the referee for consideration of Dr. Crook's report. ORS 656.298(6).