Argued and submitted June 9, reversed and
remanded with instructions December 8, 1982

In the Matter of the Compensation of
Irene Penifold, Claimant.

**PENIFOLD,**
*Petitioner,*

*v.*

**STATE ACCIDENT INSURANCE FUND
CORPORATION,**
*Respondent.*

(WCB No. 78-9826, CA A23514)

654 P2d 1142

Peter McSwain, Eugene, argued the cause for petitioner. On the brief were Evohl F. Malagon and Malagon & Velure, Eugene.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Gillette, Presiding Judge, and Warden and Young, Judges.

WARDEN, J.

## WARDEN, J.

Claimant seeks review of an order of the Workers' Compensation Board affirming the referee's denial of her occupational disease claim. In an earlier decision in this case, we remanded it to the referee for reconsideration in light of claimant's additional medical evidence. *Penifold v. SAIF,* 49 Or App 1015, 621 P2d 646 (1980). In the proceedings leading to that decision, the referee had found claimant's contact dermatitis to be compensable. The Board had reversed, finding that her condition resulted from exposure to substances encountered off the job. On remand, the referee determined that claimant's dermatitis was not compensable. The Board affirmed, and claimant appeals. We reverse.

Claimant had been a nurse's aide at Eugene Hospital and Clinic for about seven years without incident. During October, 1976, however, she began suffering from contact dermatitis on her hands and forearms. She filed a claim on November 19, 1976. It was accepted and later closed with payment of one day's temporary total disability and no finding of permanent disability.[1]

Claimant's condition flared up again in April, 1977, and she began wearing rubber gloves at home to avoid contact with potentially irritating substances. The condition flared up again in September, 1978, and she filed a claim for aggravation of her previously accepted claim. She was examined by Dr. Moyer, who prescribed medication but did not specifically diagnose claimant's condition. In February, 1979, claimant was examined by Dr. Rollins, who found her to be sensitive to certain substances used in cosmetics and hand creams and to substances found in rubber gloves. He diagnosed contact dermatitis that is aggravated by the use of rubber gloves, exposure to irritants at work and "contacts in her home." Claimant's employment was terminated by her employer on November 27, 1978, because she

---

[1] Although this is not precisely the same situation as that presented in *Frasure v. Agripac,* 290 Or 99, 619 P2d 274 (1980), or *Saxon v. Lamb-Weston,* 49 Or App 887, 621 P2d 619 (1980), *rev den* 290 Or 727 (1981), claimant does not contend in this court that the employer is estopped to deny the compensability of her condition because it accepted her original claim. We need not decide, therefore, whether the fact that claimant's original claim was accepted and closed with an award of temporary total disability prevents the employer from contesting the compensability of this aggravation claim.

was "[u]nable to continue as nurse aide due to skin irritation from solution in hospital."

Claimant's medical expenses were not paid by SAIF. The nonpayment was considered a *de facto* denial of the claim, and she requested a hearing. The referee found claimant's condition to be compensable. SAIF requested review, and the Board reversed. As indicated above, this court remanded for consideration of medical reports received after the hearing. Those reports from Dr. Storrs state that from patch testing it was determined that the acute dermatitis that had developed during claimant's employment at Eugene Hospital was directly associated with rubber gloves and the Septisoft soap used in her work at the hospital, although allergic reactions to other substances were also found.

On remand, the referee determined that under the test established in *James v. SAIF,* 290 Or 343, 624 P2d 565 (1981), claimant's condition was not compensable. The referee concluded that she had not established that her condition was caused by circumstances to which she was not ordinarily subjected or exposed other than during her employment. The referee pointed out that, although claimant was exposed to Septisoft soap only on the job, she wore rubber gloves at home as well as on the job and was potentially exposed to the cosmetic ingredients to which she was sensitive only at home. The Board affirmed the referee, applying a rule it had recently established, requiring that in order to prove entitlement to compensation for an occupational disease a claimant must show that the work exposure was the "significant predominant cause" of the condition.

First, we note that the Board's formulation of the rule for compensability of occupational diseases, although it may not materially differ from the rule established by the Supreme Court and this court, was adopted before our decision in *SAIF v. Gygi,* 55 Or App 570, 639 P2d 655, *rev den* 292 Or 825 (1982). In *James v. SAIF, supra,* the Supreme Court held that a claimant seeking compensation for an occupational disease must show that the condition arose within the scope of employment and that it "was caused by circumstances 'to which an employe is not ordinarily subjected or exposed other than during a period

of regular actual employment.' ORS 656.802(1)(a)." 290 Or at 348. In *Gygi,* we held that a disease is compensable "[i]f the at-work conditions, when compared to the nonemployment exposure, are the major contributing cause of the disability * * *." 55 Or App at 574. The question presented, then, is whether claimant has met her burden to prove that her exposure at work was "the major contributing cause" of her contact dermatitis. We conclude that she has met that burden.

The three suggested causes for the flare-up of claimant's dermatitis during her work at Eugene Hospital are Septisoft soap, to which claimant was exposed only at work, certain cosmetic ingredients, to which she was not exposed at work, and rubber gloves, which she wore at work and at home. We do not consider the cosmetic ingredients to be of significance because, although there was evidence that the ingredients are commonly used, there was no evidence that claimant actually used products containing them. More importantly, claimant's condition cleared up after she had left her employment at the hospital and stopped using rubber gloves. In addition, Dr. Storrs, although noting claimants' reaction to those cosmetic ingredients, concluded:

> "* * * There is now no doubt in our minds that Mrs. Penifold's acute dermatitis, which occurred during the time that she was working at the Eugene Hospital and Clinic as a nurse's aide, was directly associated with her use of rubber gloves and Septisoft liquid soap. * * *."

If claimant's condition was produced solely by her exposure to Septisoft soap, the claim would be compensable. It is the use of the rubber gloves both at work and at home that creates a question as to causation. Claimant left her employment on November 27, 1978, thus terminating her exposure to Septisoft. She continued to wear rubber gloves at home to avoid contact with soaps and detergents until March, 1979, when she was informed of her sensitivity to the gloves. Claimant testified, however, that she did not begin to use rubber gloves at home until after she developed the skin problems. After claimant had left work and stopped using rubber gloves, her hands improved over a period of time. Dr. Storrs' report stated that it is not unusual for contact dermatitis symptoms to last for several

months. We conclude from this that, although claimant's use of rubber gloves at home might have been a contributing factor to her condition, the at-work exposure to Septisoft soap was the *major* contributing cause and that claimant's dermatitis is a compensable occupational disease.

Reversed and remanded with instructions to order the claim accepted.