Argued April 1, reargued July 8, affirmed September 5, 1968

LORENTZEN ᴇᴛ ᴀʟ, *Respondents, v.* STATE
COMPENSATION DEPARTMENT ᴇᴛ ᴀʟ,
*Appellants.*

444 P. 2d 946

*Quintin B. Estell,* Assistant Attorney General,
Salem, argued and reargued the cause for appellant
State Compensation Department of Oregon. With him
on the briefs were Robert Y. Thornton, Attorney General, and Wallace Carpenter and Donald J. Howe,
Assistant Attorneys General, Salem.

*James H. Clarke,* Portland, argued and reargued
the cause for appellant Crown Zellerbach Corporation.
With him on the briefs were McColloch, Dezendorf &
Spears, and Lewis P. Scott and John C. Wright, Jr.,
Portland.

*Clifford B. Olsen*, Portland, argued and reargued the cause for respondents. With him on the briefs was Charles J. Strader, Portland.

Before PERRY, Chief Justice, and McALLISTER, SLOAN, O'CONNELL, GOODWIN, DENECKE and LUSK, Justices.

O'CONNELL, J.

This is an appeal from a judgment of the circuit court for Clatsop county setting aside an order of the Workmen's Compensation Board and reinstating an order of the hearing officer allowing plaintiff's claim for workmen's compensation.

Defendants' first contention relating to the scope of judicial review is disposed of by *Coday v. Willamette Tug & Barge Co.*, recently decided, 250 Or 39, 440 P2d 224 (1968). There we held that under ORS 656.298(6) the trial court and this court are charged with the duty of making a de novo review of the record forwarded by the Board.

The remaining question is whether plaintiff suffered an injury compensable under ORS 656.002(6) of the Workmen's Compensation Law, which permits recovery only for "an accidental injury * * * arising out of and in the course of employment."[1] More specifically, the question is whether there is a causal connection, both legal and medical, between plaintiff's work activity and the injury he suffered.

We adopt, with minor alterations, the trial court's

---

[1] The full text of ORS 656.002(6) is as follows:

"(6) A 'compensable injury' is an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to accidental means."

statement of facts. On the 29th day of January, 1966, the decedent, who was 46 years of age, was employed by the Crown Zellerbach Corporation as a mechanic working on heavy equipment, among other things. On that date decedent and one James G. Osterlund, another employee, went from the Seaside, Oregon area to a logging landing to make certain repairs upon an outrigger of a logging loader. They placed certain tools in their truck and drove to the scene and began to work upon a piston which was part of the outrigger. The piston was approximately eight inches in diameter and three feet long and was subjected to hydraulic pressure on one side, making it difficult to move. The workmen attempted to move the piston using various types of tools including crowbars, sledge hammers, and a jack and a chain. This labor was described as "hard work" and the workmen were "sweating" and "worked up" as a result. The workmen's efforts were to no avail and they stopped to rest, to smoke, and to discuss the situation. Approximately two or three minutes after ceasing the labor, decedent suddenly spun around and sat down, holding the back of his neck with his hands. Decedent appeared to be white in color and was shaking and complained of a pain in his neck and head and of weakness and lightheadedness. Shortly thereafter, Osterlund drove the decedent home after which he reported to his family's physician, Dr. Russell Parcher. Later that same day decedent lapsed into a coma, was hospitalized, and remained there until he expired on February 6, 1966.

There is substantial agreement that decedent died from a cerebral hemorrhage having as its source a rupture of an aneurysm of an artery in the area of the skull or spine. It is the claimant's contention that the rupture of the aneurysm occurred as a result of the

raising of decedent's blood pressure through his work activity. Employer and Department contend that the work activity did not lead to this result and the rupture was spontaneous. In fact, Dr. Charles Campbell, defendants' witness, testified in effect that although work performed under physical or emotional stress may increase one's blood pressure, the increase would not be sufficient to have any influence upon the rupture of an aneurysm.

Dr. Robert Dow, plaintiff's witness, expressed the contrary view. He testified that "Anything that raises blood pressure physiologically will have some contribution to a hemorrhage, and if a patient that we have knowledge of having an aneurysm, as a rule we caution them against vigorous straining, heavy lifting, other things that would tend to raise their blood pressure, and yet it is well known that hemorrhages can occur in people with aneurysms under very different circumstances so that is about as far as I could say." He added, "The exertion that you describe [Lorentzen's work activity] would not be what a doctor would advise a patient to do if he knew that he had such an aneurysm." With respect to Lorentzen's activity in the present case, Dr. Dow testified that "It could have been the straw that broke the camel's back so to speak, that contributed to a degree to the eventual rupture of this aneurysm." When asked if it was a "material contributing factor," he responded that he "would not say that this particular exertion was a major factor producing this rupture," but he was of the opinion that "it is probable that it had some influence to bear on the rupture." Dr. Dow's explanation for the formation of an aneurysm was as follows:

"* * * [I]t is felt that there is probably some inherent defect in the formation of the coatings of

the blood vessels, that is, the various structures of the blood, well, the blood vessel, particularly the media, and that there is a defect in the structure there where the two vessels come together, and then on the basis of long continued bombardment of this weakened area with the flow of blood it causes the edema for the other structures kind of pooch out through this articular defect, and this gradually enlarges over a period of time and eventually ruptures."

The hearing officer regarded Dr. Dow's explanation for the rupture of an aneurysm more reasonable than that given by Dr. Campbell. The hearing officer's findings of facts on this point were as follows:

"There was further medical testimony that each surge of pressure on the artery wall caused some small further weakening of the artery and subsequent enlargement of the aneurysm, and any increase in circulation and blood pressure could inevitably be more damaging. The logic of this testimony, coupled with the close proximity of time of the rupture to the exertion leads me to accept this testimony."

It may appear presumptuous for the members of this court, untrained in medical science, to make a choice between two conflicting medical theories, but the Workmen's Compensation Act imposes that task upon us and we must do the best we can to carry it out. In making the choice in the present case we find ourselves influenced by the same consideration which the hearing officer relied upon in reaching his conclusion.

Dr. Parcher testified that exertion is a common contributing factor in causing the rupture of an aneurysm. Dr. Parcher, in response to a hypothetical question, testified unequivocally that the exertion was a material contributing factor in causing Lorentzen's injury and death. The hypothetical question was in-

accurate in failing to mention the time lapse between the exertion and the attack, but in view of Dr. Parcher's other testimony we do not think that he would have answered differently had the question mentioned the lapse of time.

Dr. Dow's explanation of the causal connection between the pressure of the flow of blood and the gradual enlargement of the artery thus causing an aneurysm seems reasonable. Likewise, the explanation that there is a causal connection between exertion and increased blood pressure seems reasonable. Dr. Dow guarded his statements carefully and would not say that the exertion was a *material* factor contributing to the rupture. However, his testimony that the exertion could have been "the straw that broke the camel's back" and that it "contributed to a degree" is a manner of expressing the materiality of the exertion as a contributing factor.

Defendants contend that even if we accept the view that exertion can cause a ruptured aneurysm, the evidence will not support a causal connection between exertion and rupture in this case. It is argued that because Lorentzen did not suffer an attack until two or three minutes after his exertion the blood pressure would have subsided and therefore would not have been the cause of the rupture. There was evidence that the subsidence of blood pressure after exertion may take as much as fifteen minutes. In the present case the lapse of time between Lorentzen's exertion and the symptoms of an attack was so short that it was not unreasonable to assume that the blood pressure was still great enough to produce the rupture.

Our appraisal of the evidence leads us to conclude that Lorentzen's exertion was a material contributing factor in causing his injury and death.

The judgment of the trial court is affirmed.