Argued September 24, reversed December 6, 1976

CHRISTENSEN, *Appellant,*
*v.*
STATE ACCIDENT INSURANCE FUND,
*Respondent.*
(No. 76-513-L-3, CA 6689)

557 P2d 48

*Thomas D. Melum,* Medford, argued the cause for

appellant. With him on the brief were Frohnmayer & Deatherage and Stuart E. Foster, Medford.

*Kevin L. Mannix,* Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Lee Johnson, Attorney General, and W. Michael Gillette, Solicitor General, Salem.

Before Schwab, Chief Judge, and Thornton and Tanzer, Judges.

THORNTON, J.

## THORNTON, J.

Claimant appeals from an order of the circuit court, affirming both the hearings referee and the Workmen's Compensation Board, denying compensation for an alleged aggravation. The issue in the case is the difficult one of ascribing causation for a lumbar spine problem leading to a fusion.

Claimant had a congenital anomaly of the lumbar spine described as a "transitional vertebra." He had no symptoms attributable to the anomaly at the time of his first compensable injury, which occurred when he injured his back lifting some metal trays in 1966. Claimant was treated intermittently for mechanical low back pain from 1966 until October of 1970. Between October 1970 and August 1972 he did not seek medical attention.

On August 16, 1972, claimant sustained a compensable lumbosacral injury when he was struck on the back by a heavy metal door while at work. Following the 1972 injury Dr. Lynch, claimant's physician, discussed the possibility of a laminectomy and fusion with the claimant but the operation was not performed. Claimant's condition stabilized and his claim was closed on July 26, 1973, with an award for permanent partial disability of five percent for unscheduled low back disability.

In February of 1974 claimant consulted Dr. Lynch regarding recurrent low back pain. During the course of consultation, the claimant related that four or five days before the consultation he slipped and fell in a bathtub at home. During his testimony before the hearings referee, claimant testified that as he was sitting down in the tub his feet slipped out from under him resulting in a fall of from eight to ten inches, and that the fall was caused in part by pain in his back and legs. Dr. Lynch concluded from the consultation that claimant had a chronic recurrent lumbosacral strain with contusions at the base of the spine.

Following the consultation, claimant was unable to work until May 6, 1974. He worked from that date until October 28, 1974, when severe low back pain again caused him to quit work. He was hospitalized for conservative treatment and observation and on December 2, 1974, a posterior and posterolateral lumbar fusion was performed.

Following a hearing on claimant's aggravation claim, the referee, in a comprehensive opinion, concluded that claimant failed to establish a causal relation between his present condition and the August 1972 injury and that circumstantial evidence indicates that claimant's present condition may be attributable to an independent nonindustrial cause. Both the Board and the circuit court agreed, but gave greater emphasis to the bathtub fall and less emphasis to the lack of an established causation.

The medical evidence in this case is almost entirely evidence provided by Dr. Lynch. Dr. Lynch has consistently maintained that the claimant's condition is referable to the August 1972 injury. In his deposition Dr. Lynch specifically denied that claimant's condition was related to the bathtub fall. He testified as follows:

> "No, I don't attach that much significance to his bathtub fall, other than having a significant contusion to the low back, from which he returned to his previous state within several weeks."

Dr. Lynch's conclusions on the issue of causation are less firm, but he has fairly consistently attributed claimant's condition to the August 1972 injury. On September 5, 1974, Dr. Lynch wrote:

> "In view of the patient's history of having had low back pain persisting after his claim closure evaluation in 1973, I feel that it is only logical that his symptoms are mainly on the basis of his August, 1972 industrial injury. * * *"

Again, in March of 1975, Dr. Lynch concluded that:

> "* * * I would have to state the injury necessitating his current treatment was due to his August, 1972,

industrial injury. He had a pre-existing developmental problem as you are aware, but this would not have necessitated a fusion unless he had developed symptoms such as he had following his August, 1972, injury."

■■ The rule generally applied in this kind of case is that once the work-connected character of an injury has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause. The issue in cases involving the range of compensable consequences flowing from a primary injury is nearly exclusively the medical issue of causal connection between the primary injury and the subsequent medical complications. 1 Larson, Workmen's Compensation Law 3-279, § 13.11 (1972).

■■ We think that in this case the claimant has produced the requisite medical evidence sufficient to establish the causal connection between his present condition and the 1972 injury. The only medical evidence presented on the issue favors the claimant. In the analogous case of *Neathamer v. SAIF,* 16 Or App 402, 518 P2d 1051 (1974), we noted that the question of medical causation is one which lay factfinders can resolve only by relying heavily on medical opinion. We conclude that Dr. Lynch's uncontroverted opinion on the issue of medical causation makes the evidence preponderate in favor of the claimant. Further, we do not think that the circumstantial evidence that claimant consulted Dr. Lynch four or five days after his bathtub fall establishes an independent nonindustrial cause for claimant's condition in light of the medical opinion to the contrary.

Reversed.