Argued and submitted November 3, 1980,
reversed and remanded July 28, 1981

In the Matter of the Compensation of
Michael Grable, Claimant.

GRABLE,
*Petitioner,*

*v.*

WEYERHAEUSER COMPANY,
*Respondent.*

(CA 16671, SC 27174)

631 P2d 768

Thomas A. Huntsberger, of Ackerman & DeWenter, Springfield, argued the cause and filed the briefs for petitioner.

J. W. McCracken, Jr., Eugene, argued the cause and filed a brief for respondent.

Before Tongue, Presiding Justice, and Howell, ** Lent, Linde, Peterson and Tanzer.**

LENT, J.

---

** Howell, J. retired November 30, 1980.

**LENT, J.**

The issue in this workers' compensation case is whether the employer is required to pay benefits to a claimant for worsening of the worker's condition where the worsening is the result of both an original compensable back injury and a subsequent off-the-job back injury.

## Background

The claimant suffered a back injury on February 21, 1978, while lifting heavy blocks of wood in his employer's mill. His claim under the workers' compensation law was accepted by the employer. He was released by his treating doctor for light work on April 3, 1978, and for full duty on May 8, 1978. That doctor was of the opinion at that time that claimant had sustained some mild permanent partial disability in his low back as a result of the accident of February 21, 1978.[1]

From April to October of 1978 claimant was employed at the same mill. He presented evidence by way of his own testimony and that of other witnesses that he continued to have an annoying, dull ache in his low back and hips and that he complained of that pain once or twice a week both on and off the job. On October 28, 1978, while on the roof of his home and pulling to the roof a steel pipe, claimant felt a sharp pain in the part of his back injured in February. Claimant did not return to work and on January 22, 1979, sent a letter, through his lawyer, to the employer asking that his claim be "reopened" for payment of medical expenses and compensation for temporary total disability from the date of the incident on the roof.[2] The employer promptly denied "claim re-opening."

---

[1] In his brief in the Court of Appeals, claimant asserted that no determination order, ORS 656.268, "has ever been issued for claimant's February injury." The employer has not disputed that assertion. As a consequence, we do not deal with a case in which the workman received an award of compensation for permanent partial disability that may have reflected a consideration of vulnerability to future trauma.

[2] The claimant had filed a claim with a fringe benefit off-the-job disability insurer as the result of the incident on the roof. He testified that he did so because his foreman told him that he could not file a workers' compensation claim for that incident and refused to give him a form to fill out for workers' compensation benefits.

The claimant requested a hearing, and the referee wrote that the matter was before him on appeal from a denial of claimant's request for "reopening his claim from a low back injury on February 21, 1978. * * * The issue is compensability." Following the hearing the referee issued his written Opinion and Order. That writing contains the melange of findings and discussion of the evidence which is apparently customarily issued by referees in workers' compensation cases. It is truly difficult to determine what are the findings of fact, as distinguished from a discussion of the evidence.[3] In that portion of his writing entitled "OPINION," the referee stated:

> "The rule generally applied is that once a work connected character of an injury has been established, the subsequent progression of that condition remains compensable as long as the worsening is not shown to have been produced by an independent non-industrial cause. Claimant suffered a low back injury in February 1978, was able to work without apparent difficulty for almost six months until October 28, 1978, when lifting a pipe onto a roof he became incapacitated.

> "In successive injury cases, liability is placed on the carrier covering the risk at the time of the most recent injury which bears a causal relationship to the disability. If the second injury merely takes the form of a recurrence of the first, and if the second injury does not contribute even slightly to the causation of the disabling condition, the insurer on the risk at the time of the original injury remains liable for the second. If the second injury contributes independently to the injury, the second insurer is solely liable even if the injury would have been much less severe in the absence of the prior condition and even if the prior condition contributed to the major part of the final condition. See in this connection, *Smith v. Ed's Pancake House,* 27 Or App 361 (1976). *I find this theory controlling.* It cannot be said that the October injury was a recurrence of the February injury although medical evidence indicates that the location and severity of the pain were

---

[3] Compare what we said in our opinion in *Rogers v. SAIF,* 289 Or 633, 637, 616 P2d 485, 487 (1980), and cases there cited. Apparently because, in workers' compensation cases, the Court of Appeals reviews de novo on the record, the court does not require the kind of findings of fact it would require of other administrative agencies; however, it appears to us that it would be of benefit to the parties, the Workers' Compensation Board, the courts, and even the referees if they were required to set forth their findings of fact, as such.

identical. The October incident precipitated the need for further medical treatment and is not the responsibility of the employer." (Emphasis added.)

He then ordered that the employer's denial of the request to reopen be affirmed. On review, the Workers' Compensation Board affirmed and adopted the referee's Opinion and Order.

The Court of Appeals affirmed without opinion. *In the Matter of the Compensation of Grable v. Weyerhaeuser Company,* 47 Or App 1, 614 P2d 635 (1980). We allowed claimant's petition for review, ORS 2.520, 289 Or 731 (1980), to consider whether the Court of Appeals has adopted conflicting rules of law for the disposition of successive injury cases and, more particularly, whether this case should have been disposed of on the authority of *Smith v. Ed's Pancake House,* 27 Or App 361, 556 P2d 158 (1976).[4]

## Has the Court of Appeals Adopted Conflicting Rules of Law in Various Successive Injury Cases?

Claimant urges that one rule of law has been established in a line of cases culminating in *Standley v. SAIF,* 8 Or App 429, 495 P2d 283 (1972), that where there is a worsening of the worker's condition resulting from a compensable injury following an off-the-job activity, and the worsening requires medical services or results in disability, the claimant makes out a compensable claim for benefits for that worsening if the claimant establishes that the prior compensable injury was a "material contributing cause" of the worsened condition. Claimant interprets the

---

[4] Once again we are confronted with being unable positively to determine whether the Court of Appeals affirmed because of its agreement with the Workers' Compensation Board on the law or because the court's de novo review of the evidence resulted in a finding against the claimant on the facts. *See, Gettman v. SAIF,* 289 Or 609, 612-613, 616 P2d 473, 474-475 (1980), and Linde, J., concurring, 289 Or at 615-616, 616 P2d at 476-477; *Rogers v. SAIF,* 289 Or 633, 616 P2d 485 (1980). We would not have allowed review had we believed that the decision of the Court of Appeals turned on an exercise of its fact-finding function under a correct rule of law. We are concerned as to whether the Board and the Court of Appeals may have applied erroneous rules of law and thereby prejudiced the factfinding function. *Compare,* what we said recently in *Inkley v. Forest Fiber Products Co.,* 288 Or 337, 345-346, 605 P2d 1175, 1179 (1980):

"The factual questions in any case depend, of course, on the law to be applied. In this case the Board's misinterpretation of the last injurious exposure rule may have prejudiced its findings of fact."

Court of Appeals decision in *Christensen v. SAIF,* 27 Or App 595, 557 P2d 48 (1976), as standing for a conflicting rule that a claimant has the burden to establish that the worsening of the condition resulting from the prior compensable injury was not the result of an independent, nonindustrial cause.

The employer seems impliedly to agree as to the state of the law for, on oral argument before this court, the employer urged that the issue presented is whether the rule in *Christensen v. SAIF, supra,* is to be adopted by this court.

Claimant contends that the first rule is established by our decisions in *Olson v. State Ind. Acc. Com.,* 222 Or 407, 352 P2d 1096 (1960), and *Lorentzen v. Compensation Department,* 251 Or 92, 444 P2d 946 (1968), and the Court of Appeals' decisions in *Lemons v. Compensation Department,* 2 Or App 128, 467 P2d 128 (1970), and *Standley v. SAIF,* 8 Or App 429, 495 P2d 283 (1972).

*Lemons v. Compensation Department, supra,* was a case in which the worker had a considerable history of low back troubles prior to September, 1966, when he had an onset of pain in his low back and left leg while lifting a tire at work. His claim was accepted for medical benefits only because he did not lose time from work. He consulted a neurosurgeon, who diagnosed nerve root compression resulting from a herniated intervertebral disc between the fourth and fifth lumbar vertebrae and prescribed conservative treatment. The claim was closed in November, 1966. In May, 1967, the worker had an off-the-job fall with immediate pain in the low back and leg and was hospitalized. The neurosurgeon performed surgery at the site of the herniated disc he had theretofore diagnosed. The Court of Appeals posed the issue as follows:

> "[This case] involves the question of whether there was causal connection between an accident-aggravated low back condition and a subsequent operation to repair an intervertebral disc in the low back where a fall intervened between the aggravation accident and the operation."

2 Or App at 129. The Court of Appeals held that in order to prevail the claimant had to show that the accident of September, 1966, "was a *material contributing cause* to the

plaintiff's condition which necessitated surgery" (emphasis added) and that the accident need not be shown to be the sole cause. For that holding, the Court of Appeals cited this court's decisions in *Lorentzen v. Compensation Department* and *Olson v. State Ind. Acc. Com.,* both *supra.*

In *Standley v. SAIF, supra,* the worker sustained a compensable low back injury in June, 1966. He had a congenital defect not specified in the reported decision and had sustained low back injury in other accidents unrelated to his employment occurring both before and after the on-the-job injury of June, 1966. In 1970 his back condition required surgery, and he claimed that the workers' compensation insurance carrier should pay for the surgery and other attendant benefits. That claim was resisted. The Court of Appeals quoted the holding of *Lemons v. Compensation Department, supra,* that the worker need only show that the on-the-job accident was a "material contributing cause" of the need for surgery, and applied the holding to the case as follows:

> "Here not only was the causal connection between the covered injury of June 1966 and claimant's surgery in 1970 shown by expert medical evidence, but the state produced no contrary expert medical evidence, and by the appeal in effect challenges the medical opinion of its own designated expert.
>
> "We agree with the circuit judge and find that the claimant has established that the accident of June 1966 was a *material contributing cause* to the 1970 condition resulting in the required surgery." (Emphasis added)

8 Or App at 433.

The rule to be drawn from *Lemons* and *Standley* is that where a worker suffers an on-the-job injury and thereafter the condition resulting from that injury is worsened by an off-the-job injury, the compensation insurance carrier will be required to afford workers' compensation benefits for the worsened condition if the worker shows that the on-the-job injury is a material contributing cause of the worsened condition.

The *Lemons* court appeared to believe that it was not establishing a new rule but simply applying a rule already established by this court in *Olson v. State Ind. Acc. Com.,* and

*Lorentzen v. Compensation Department,* both *supra.* That belief was inaccurate.

This court was concerned in *Olson* with a widow's claim for benefits for the death of her husband resulting from a coronary occlusion allegedly resulting from on-the-job activity. In exploring whether the claim was compensable, this court was faced with determining whether there was evidence that the decedent's injury was one "arising out of" his employment.[5] In that context, this court stated:

> "Reduced to its simplest form 'arising out of' as used in the act means the work or labor being performed was a causal factor in producing the injury suffered by the workman. *Ramseth v. Maycock,* 209 Or 66, 304 P2d 415; *Brazeale v. State Ind. Acc. Comm.,* 190 Or 565, 227 P2d 804; *Larsen v. State Ind. Acc. Com.,* 135 Or 137, 292 P 195. It need not be the sole cause, but is sufficient if the labor being performed in the employment is a *material, contributing cause* which leads to the unfortunate result. *Elford v. State Ind. Acc. Comm.,* 141 Or 284, 17 P2d 568." (Emphasis added)

222 Or at 414-415.[6] This court went on to hold that there was evidence from which the trial court could find[7] that the work activity materially contributed, along with the worker's pre-existing coronary artery disease, to his death.

In *Lorentzen v. Compensation Department, supra,* this court was concerned with a case much like *Olson.* In *Lorentzen* a widow sought benefits for the death of her husband. She contended that his work activity raised his blood pressure to the extent that it caused a rupture of an

---

[5] At the time Olson's claim arose, the statutes were differently numbered and worded than now, but then, as now, one of the requirements of compensability has been that the worker shall have sustained an accidental injury "arising out of and in the course of" employment. *Compare* Or Laws 1957, ch 718, § 3, with present ORS 656.005(8)(a).

[6] In *Elford v. State Ind. Acc. Comm.,* 141 Or 284, 17 P2d 568 (1932), the worker's physical exertion on the job was found materially to have aggravated a pre-existing condition in that the exertion caused a rupture of a "malignant cancerous growth" in the worker's abdomen. This court found compensability, but it appears that the court's attention was not focused on the "arising out of issue"; rather, the court was concerned with whether the worker sustained a personal injury "by accident * * * caused by violent or external means." Oregon Code 1930, § 49-1827. That was not the same issue presented in *Olson v. State Ind. Acc. Comm.,* 222 Or 407, 352 P2d 1096 (1960).

[7] At the time Olson's claim was being litigated, workers' compensation cases were tried in circuit court in the same manner as other civil cases.

aneurysm of an artery, thus producing a cerebral hemorrhage, from which he died. This court stated that the factual question[8] was whether the worker had sustained an accidental injury arising out of and in the course of employment. This court said:

> "More specifically, the question is whether there is a causal connection, both legal and medical, between plaintiff's work activity and the injury he suffered."

251 Or at 93. The court went on to search the record for evidence that the exertion at work was a material factor in producing the rupture and found such evidence in the testimony of a medical doctor. The opinion concluded as follows:

> "Our appraisal of the evidence leads us to conclude that Lorentzen's exertion was a *material contributing factor* in causing his injury and death." (Emphasis added.)

251 Or at 97.

This review of our cases relied upon by the Court of Appeals in *Lemons* and *Standley* discloses that the respective courts were not faced with the same issue. That does not necessarily mean that the rule adopted by the Court of Appeals in *Lemons* and *Standley* is to be rejected; however, as our later discussion will reveal, Professor Larson[9] contends that the issue of compensability is not properly analyzed in the same way in the situation presented in *Lemons* and *Standley* as in the situation presented in *Olson* and *Lorentzen.* Before that discussion, however, we shall examine the decision of the Court of Appeals in *Christensen v. SAIF,* 27 Or App 595, 557 P2d 48 (1976).

In *Christensen* the Court of Appeals was faced with the same kind of problem as that presented in *Lemons* and *Standley.* "The issue in the case is the difficult one of ascribing causation for a lumbar spine problem leading to a fusion." 27 Or App at 597. Claimant had a congenital anomaly in his low back which had been asymptomatic at

---

[8] The procedure for obtaining compensation had changed from the time of Olson's accident to that of Lorentzen's accident. In *Lorentzen v. Compensation Department,* 251 Or 92, 444 P2d 946 (1968), this court reviewed the evidence de novo on the record and acted as judge of both the facts and the law.

[9] 1 Larson's Workmen's Compensation Law 3-348 *et seq.* (1978).

the time of his first compensable injury in 1966. He was treated intermittently for low back pain from 1966 to late 1970. From that time until August, 1972, he did not seek medical attention. In August, 1972, he sustained another compensable low back injury, and following that his doctor discussed with him the possibility of surgery, namely, a laminectomy and fusion. Surgery was not performed, and that claim was closed in July, 1973, with an award of five percent unscheduled permanent partial disability. In February, 1974, claimant slipped and fell in a bathtub at home. He testified before the Workers' Compensation Board referee that as he was sitting down in the tub, his feet slipped out from under him, causing him to fall about eight to ten inches. Four or five days later he consulted the same doctor, who "concluded from the consultation that claimant had a chronic recurrent lumbosacral strain with contusions at the base of the spine." 27 Or App at 597. Claimant was unable to work for the next three months and then worked for five months until low back pain caused him to quit work. After some conservative treatment, he had a fusion in December, 1974.

His application for increased compensation on account of worsened condition, ORS 656.273(1),[10] was denied, and he requested a hearing. Upon judicial review, the Court of Appeals stated the background of the case:

"Following a hearing on claimant's aggravation claim, the referee, in a comprehensive opinion, concluded that claimant failed to establish a causal relation between his present condition and the August 1972 injury and that circumstantial evidence indicates that claimant's present condition may be attributable to an independent nonindustrial cause. Both the Board and the circuit court agreed, but gave greater emphasis to the bathtub fall and less emphasis to the lack of an established causation."

27 Or App at 598. The Court of Appeals then reviewed the testimony of the same doctor. The tenor of that testimony was that claimant's condition which necessitated the surgery and attendant disability were not related to the

---

[10] ORS 656.273(1) provides:

"After the last award or arrangement of compensation, an injured worker is entitled to additional compensation, including medical services, for worsened conditions resulting from the original injury."

bathtub fall, but were mainly on the basis of his compensable injury of August, 1972. The Court of Appeals then stated:

> "The rule generally applied in this kind of case is that once the work-connected character of an injury has been established, the subsequent progression of that condition remains compensable so long as the worsening is not shown to have been produced by an independent nonindustrial cause. The issue in cases involving the range of compensable consequences flowing from a primary injury is nearly exclusively the medical issue of causal connection between the primary injury and the subsequent medical complications. 1 Larson, Workmen's Compensation Law 3-279, § 13.11 (1972)."

27 Or App at 599. The court then found that the claimant had produced the necessary evidence to establish the causal connection required by ORS 656.273(1) and held his claim for increased compensation on account of worsened condition should be allowed.

It will be perceived that in *Christensen* the court stated a rule which, in its terms, is not the same rule as that stated and applied in *Lemons* and *Standley*. The rule stated in *Christensen* is drawn from an analytical approach for which Professor Larson contends. There is nothing in the *Christensen* opinion to indicate that the Court of Appeals considered that it was adopting a new rule for deciding claims for increased compensation on account of worsened condition. The older cases of *Lemons* and *Standley* were not mentioned; the rule stated in those cases was not disapproved.[11]

---

[11] Neither party's brief in *Christensen v. SAIF*, 27 Or App 595, 557 P2d 48 (1976), referred to either *Lemons v. Compensation Department*, 2 Or App 128, 467 P2d 128 (1970), or *Standley v. SAIF*, 8 Or App 429, 495 P2d 283 (1972). Oregon Briefs, Vol. 2281.

The employer has also cited to us *Myers v. SAIF*, 34 Or App 13, 577 P2d 546 (1978), as being "the case most closely in point." The employer's brief discusses what the referee, "citing the rule in Christensen, held" and states that the Workers' Compensation Board adopted the Opinion and Order of the referee. The brief tells us that the Court of Appeals affirmed without opinion. We assume that the employer would have us conclude that the Court of Appeals likewise applied its holding in *Christensen*. We are unable with any confidence to do so. The Court of Appeals' per curiam opinion in *Myers* does not cite *Christensen;* rather, *Bowman v. Oregon Transfer Co.*, 33 Or App 241, 576 P2d 27 (1978), is cited as the authority on which the case was decided by the Court of Appeals. This leads us to

As noted above, in *Christensen* the Court of Appeals drew upon Professor Larson's conceptualization of the proper analytical approach to the range of compensable consequences flowing from the "primary" injury. In the blackletter, Professor Larson states:

> "§ 13.00 When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."

1 Larson's Workmen's Compensation Law 3-348, § 13.00 (1978). The author elaborates on the blackletter in § 13.11:

> "A distinction must be observed between causation rules affecting the primary injury * * * and causation rules that determine how far the range of compensable consequences is carried, once the primary injury is causally connected with the employment. * * *"

Looking back, we see that this court in *Olson* and *Lorentzen* was concerned with causation rules affecting the primary injury. In *Lemons* and *Standley* the Court of Appeals applied those same rules to determine how far the range of compensable consequences should be carried. In doing so, the Court of Appeals did not employ what Professor Larson would consider to be a proper analytical approach. In *Christensen,* on the other hand, the Court of Appeals analyzed the issue as would Professor Larson, who in § 13.11 went on to say:

> "But when the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based upon the concepts of 'direct and natural results,' and of claimant's own conduct as an independent intervening cause." Larson, *supra* at 3348.

---

believe that the Court of Appeals' decision was the result of its function as factfinder. *See, Gettman v. SAIF* and *Rogers v. SAIF,* both *supra* n 4.

On the other hand, claimant, in his brief, has sought to distinguish *Myers* despite the fact that the Court of Appeals did not rely upon that case. The points of distinction all have to do with facts, not law, and we do not see any reason for further consideration of the decision in *Myers.*

In connection with the rule stated by the Court of Appeals in *Christensen,* 27 Or App at 599, above quoted, Professor Larson cites a decision of the Mississippi Supreme Court in a case similar to the one at bar. In *Medart Div. of Jackes-Evans Mfg. v. Adams,* 344 So2d 141 (Miss 1977), claimant injured her low back while lifting at work. A few months later she had surgery for the condition. She continued to have soreness in her back, and about three and a half months after the surgery experienced "severe pain" in her back while picking up clothes from a laundry basket at home. Eventually this led to further surgery at the same site as the first operation. The court stated the issue as follows:

> "The only question in this case that merits discussion is whether claimant's injury of July 2, 1972, resulting from bending over to pick up some clothes in her home is an independent intervening nonindustrial cause."

344 So 2d at 143. The Mississippi court then quoted from Professor Larson's text a passage illustrating his view as to what kind of activity is not an independent intervening cause:

> "* * * [Benefits should be awarded] if the triggering episode is some nonemployment exertion like raising a window or hanging up a suit, so long as it is clear that the real operative factor is the progression of the compensable injury, associated with an exertion that in itself would not be unreasonable in the circumstances. * * *" Larson, *supra* at 3-353, § 13.11.

The court held, applying the quoted text, that the complications following the laundry basket episode were not the result of an independent intervening cause, and the disability resulting from that episode was compensable as flowing from the primary injury.

There is no doubt that the Court of Appeals in *Christensen,* in stating the law, focused on the approach urged as being proper by Professor Larson; however, if that court had examined the evidence under the rule to be drawn from *Lemons* and *Standley,* the claimant in *Christensen* apparently would still have prevailed. Immediately following the statement of the rule espoused by Professor Larson, the Court of Appeals turned to its application:

> "We think that in this case the claimant has produced the requisite medical evidence sufficient to establish the causal connection between his present condition and the 1972 injury. * * * Further, we do not think that the circumstantial evidence that claimant consulted Dr. Lynch four or five days after his bathtub fall establishes an independent nonindustrial cause for claimant's condition in light of the medical opinion to the contrary."

27 Or App at 599. The first sentence is more in tune with the rule stated in *Lemons* and *Standley* than the rule paraphrased from Professor Larson's text.

We have come to the conclusion that, while the Court of Appeals has stated differing rules for decision of the subsequent off-the-job injury cases discussed above, the rules are not in conflict. We do not perceive that the result in any of those cases would have been different if the court had interchanged the rules. We believe the same is true with respect to *Medart Div. of Jackes-Evans Mfg. v. Adams, supra.* Had the Mississippi court inquired whether the primary injury was a "material contributing cause" of the claimant's condition following the laundry basket episode, the result would clearly have been the same.

We consider the distinction urged by Professor Larson to be more apparent than real. He expresses his rule in two different sets of words, but without in any manner indicating that he believes there to be any difference flowing from the manner of expression. At one place he speaks of the requirement that the subsequent off-the-job injury be the "direct and natural result" of the primary compensable injury; at another, he focuses upon whether the later injury is an "independent intervening cause." The approach he criticizes is in that of inquiring whether the compensable injury is a "material contributing cause" of the worsened condition.

■■ We believe that the compensability of a worsened condition following an off-the-job injury may be determined equally as well under the rule stated and applied in *Lemons* and *Standley* as that stated by Professor Larson and paraphrased in *Christensen.* We conclude that if the claimant establishes that the compensable injury is a "material contributing cause" of his worsened condition, he has

thereby necessarily established that the worsened condition is not the result of an "independent, intervening" non-industrial cause. We hold that an employer is required to pay workers' compensation benefits for worsening of a worker's condition where the worsening is the result of both a compensable on-the-job back injury and a subsequent off-the-job injury to the same part of the body if the worker establishes that the on-the-job injury is a material contributing cause of the worsened condition.

## Application of the Last Injurious Exposure Rule

The referee and the Board, by adopting the referee's Opinion and Order, found this claim to be governed by the theory applied to allocation of responsibility for the payment of compensation, as represented by the decision of the Court of Appeals in *Smith v. Ed's Pancake House,* 27 Or App 361, 556 P2d 158 (1976). The issue in that case was stated by that court to be:

> "The issue in this appeal is *which of two compensation carriers* must bear the cost of claimant's workmen's compensation claim." (Emphasis added.)

27 Or App at 363. The mere statement of the issue demonstrates that the *holding* of the case is not directly applicable to the case at bar.

In *Smith* the claimant injured her low back in May, 1973, while working for the first employer. In July, 1973, she was declared to be medically stationary. She worked for that employer for about eight months longer and quit for reasons unrelated to her job. About a month after leaving the first job she had an on-the-job fall in the employ of a second employer. She again complained of pain in the low back. It was found on conflicting evidence that she had low back pain prior to the fall at work but that the condition was more severe after the fall. The Court of Appeals accepted the testimony of the treating doctor that the fall while in the employ of the second employer was "a material contributing cause" of claimant's worsened condition. On that basis the Court of Appeals placed the responsibility for payment of compensation on the carrier for the second employer.

■ In doing so, the Court of Appeals applied a rule stated in Professor Larson's treatise dealing with the general subject of "RIGHTS BETWEEN INSURERS." It is clear that the author is concerned with successive workers' compensation insurers, not with a compensation carrier on the one hand and an off-the-job insurer on the other hand. The blackletter of the text is as follows:

> "When a disability develops gradually, or when it comes as the result of a succession of accidents, the insurance carrier covering the risk at the time of the most recent injury or exposure bearing a causal relation to the disability is usually liable for the entire compensation. In some jurisdictions apportionment has been worked out by judicial decision, or provided for by express statute, when events within the coverage periods of successive insurers contribute causally to the final disability."

4 Larson's Workmen's Compensation Law 17-70, § 95.00. The author, in discussing this allocation of responsibility among worker's compensation carriers, goes on to state:

> "The 'last injurious exposure' rule in successive-injury cases places full liability on the carrier covering the risk at the time of the most recent injury that bears a causal relation to the disability."

4 Larson's Workmen's Compensation Law 17-71, § 95.12. The policy underlying this rule is to free the worker from the burden of assigning or allocating responsibility when it is difficult or impossible to determine which injury caused the condition giving rise to the claim for benefits. *Compare, Inkley v. Forest Fiber Products Co.,* 288 Or 337, 605 P2d 1175 (1980), and *Holden v. Willamette Industries,* 28 Or App 613, 560 P2d 298 (1977), both of which were occupational disease claims, but discussed the policy considerations.

Such policy considerations have no bearing upon the kind of successive injury situation presented in the case at bar. Contrary to the finding of the referee, the Board and, presumably, the Court of Appeals, not only do we not believe the theory of the last injurious exposure rule to be controlling,[12] we find it to be not appropriate.

---

[12] *See,* the emphasized sentence of our quotation from the referee's opinion at p 390.

As in *Inkley v. Forest Fiber Products Co., supra,* and *Gettman v. SAIF,* 289 Or 609, 616 P2d 473 (1980), we are concerned that the factfinding function of the Workers' Compensation Board may have been prejudiced by misinterpretation of the law. In those cases, we remanded to the Court of Appeals to remand to the Board for the Board to consider the circumstances in light of this opinion. Because of the de novo review function of the Court of Appeals, we have decided to remand to the Court of Appeals and to allow that court to decide whether to remand further.

Reversed and remanded.