Argued and submitted November 15, 1982, reversed March 30, 1983

In the Matter of the Compensation of
Dillard John Graves, Claimant.

GRAVES,
*Petitioner,*
*v.*
STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(81-09411; CA A24821)

660 P2d 1080

David C. Force, Eugene, argued the cause for petitioner. On the briefs were Peter W. McSwain and Malagon & Velure, Eugene.

Donna M. Parton, State Accident Insurance Fund Corporation, Salem, argued the cause for respondent. On the brief was Darrell E. Bewley, Salem.

Before Gillette, Presiding Judge, and Warden, and Young, Judges.

YOUNG, J.

## YOUNG, J.

In this workers' compensation case the sole question is whether claimant's temporary total disability benefits should be terminated following a subsequent, off-the-job injury. We reverse the Board's order and reinstate the referee's order, which continued benefits.

Claimant injured his lower back at work on July 23, 1980, while cutting a log. He filed a claim, and SAIF accepted it. X-rays indicated that he had suffered a herniated disc between the fourth and fifth lumbar vertebrae. On September 15, 1980, a laminectomy and discectomy were performed, and disc material was removed. Following the surgery, the surgeon described claimant as improved but continuing to suffer a "significant disability in his back function" with a "list to the right" and pain in the left groin area during "straight leg raising." Claimant was referred to Dr. Bond for follow-up care. The doctor found claimant suffering from low back pain and spasms, numbness and tingling in his left thigh, cold feet, and groin pain, related to an inability to bear weight well on his left leg. An x-ray on November 24 showed "minor interspace narrowing at L4-5," but the spine appeared otherwise normal.

At about the same time a friend, John Roney, witnessed claimant's condition. He testified:

"* * * We were playing pool one day, and I backed up and barely tapped him. And he went like he was going to fall and grabbed me so he didn't hit the ground. His left side kind of gave out on him.

"The second time was just before Thanksgiving. And he went to move to his left and the same thing happened. He grabbed the pinball machine to keep from going down."

On December 15 and 19, claimant saw Dr. Bond and demonstrated that he could walk straight and could bend forward about 70 degrees. His back was tight, reportedly from having picked up walnuts with his family. The doctor thought, but did not note at the time, that claimant was medically stationary and would soon be able to return to work. He did not, however, release claimant for work.

What is claimed to be the second injury occurred while claimant was shopping on December 23, 1980. He

turned to speak to another person and bumped into a shopping cart. He testified:

"* * * [M]y legs wouldn't turn with my body. I couldn't get my feet to turn with my shoulders.

"I turned around to show her and * * * like my leg went dead. Nothing there, just numb. Just like there wasn't anything there."[1]

Claimant's symptoms took a turn for the worse. He suffered pain and burning in his low back, and his left leg "throbbed like a toothache." He remained unable to work; nevertheless, SAIF stopped paying temporary total disability benefits. When claimant protested, SAIF issued what it termed a "partial denial" and refused to make further payments. SAIF claimed that the shopping cart incident was a new, intervening injury. On February 16, 1981, an x-ray revealed a herniated disk at the same location as before, between the fourth and fifth lumbar vertebrae.

■ The referee found that claimant had suffered an exacerbation of his on-the-job injury.[2] The only issue before us is the correctness of the Board's reversing the referee and finding a new injury for which SAIF is not responsible. SAIF has stressed that Dr. Bond believed that claimant was medically stationary shortly before the shopping cart incident. SAIF's emphasis is misleading. Whether or not claimant had been medically stationary, the question is whether his original on-the-job injury was a material, contributing cause of his current disability. *Grable v. Weyerhaeuser Company,* 291 Or 387, 631 P2d 768 (1981).

■ We find that claimant's on-the-job injury in July, 1980, was a material, contributing cause of his worsened condition. First, the period of time between his laminectomy on September 15 and the flareup of symptoms after December 23 is relatively short, and his leg and lumbar symptoms continued during this interim period. Second,

---

[1] It is not clear from the evidence whether claimant fell after bumping the shopping cart.

[2] Although the referee found "aggravation," he did so in a medical sense only. This is not an aggravation claim, proceedurally speaking. This claim was an open claim from the original on-the-job injury, and it has not been closed by a determination order. *See* ORS 656.268.

the manner of claimant's apparent leg failure on December 23 is substantially similar to the episodes described by witness Roney as occurring in November. Third, after December 23, claimant suffered, not new or different symptoms, but heightened symptoms similar to those after the on-the-job injury and surgery. The identical lumbar disc was found herniated after the July 23 incident and after the December 23 incident. Finally, although Dr. Bond acknowledges hypothetically that relatively minor impact could cause a normal person to suffer a herniated disk, he concludes that claimant's

> "present disability is a continuation of his disability resulting from his initial industrial accident."

Claimant suffered a worsening of his compensable injury, and he is entitled to benefits. *See Grable v. Weyerhaeuser Company, supra.*

The Board's order is reversed; the referee's order is reinstated.