Argued and submitted February 1, reversed and remanded May 23, 1984

In the Matter of the Compensation of
Ruth A. Coddington, Claimant.

CODDINGTON,
*Petitioner,*

*v.*

STATE ACCIDENT INSURANCE FUND
CORPORATION,
*Respondent.*

(81-05848; CA A28716)

681 P2d 799

Richard T. Kroop, Albany, argued the cause for petitioner. With him on the brief was Emmons, Kyle, Kroop, Kryger & Alexander, P.C., Albany.

Darrell E. Bewley, Appellate Counsel, State Accident Insurance Fund Corporation, Salem, argued the cause and filed the brief for respondent.

Before Richardson, Presiding Judge, and Warden and Newman, Judges.

NEWMAN, J.

## NEWMAN, J.

Claimant appeals an order of the Workers' Compensation Board that reversed the referee and denied claimant's aggravation claim. We reverse.

Claimant is 47 and has been a bus driver since 1968. She has degenerative disc disease and a history of back problems. She had no back pain in the last half of 1980, however, and accompanied her husband on a month-long motorcycle trip during that summer. On January 13, 1981, she suffered a compensable injury at work when she slipped and fell. Her family doctor, Dr. Altizer, diagnosed a back sprain and referred her to Dr. McGee, a back specialist, who diagnosed ligament and sacroiliac joint damage. She received treatment for pain throughout January and February, 1981. In late February and March, she rode as a passenger with her husband on short motorcycle trips. Although she was not pain-free, she felt that she should return to work. On March 2, 1981, Dr. Altizer released her to return to work and did not see her again until late April.

Claimant experienced pain after returning to work on March 9, 1981. On April 10, 1981, Dr. Altizer reported to insurer:

> "Please be advised that this patient was seen for final evaluation of her low back sprain sustained on January 13, 1981 in an office visit on March 2, 1981. The patient was getting along well enough at that time that she had been pain-free without physiotherapy in the form of ultrasound treatment and was able to be up and about, accomplishing household duties with caution. She felt that she was capable of returning to her duties as a school bus driver safely, and that she would be able to accomplish the arm movement and the trunk motions necessary for adequate road surveillance. She was still moving about somewhat gingerly.

> "The patient's condition now is essentially medically stationary. There should be no additional residuals from her work injury superimposed on her pre-existing back disease."

In mid-April, 1981, she had the flu, and while trying to sleep at home on April 23, 1981, she suffered a spasmodic "twitch" and felt a sudden stabbing pain. On May 5, Dr. McGee did a myelogram, recommended a laminectomy and, on May 7, removed a herniated disc.

On May 22, 1981, Dr. Altizer wrote to insurer and explained that, when she had used the term "medically stationary," she meant that "the patient's condition currently being treated has reached a point at which no further acute medical care is needed, and that the patient is capable of returning to gainful employment." The doctor had reexamined her office records and learned that claimant had received ultrasound treatments in her office for her back on March 12 and April 3 and thus was "not totally asymptomatic." The doctor concluded:

> "[I]n reading the record subsequent to my report to you of April 10 * * * Mrs. Coddington's ability to return to work was subsequently proven to be wrong by virtue of her recurrence of symptoms so shortly after her return to work."

On June 5, SAIF denied claimant's aggravation claim, stating that the surgery was the result of the April 23 off-the-job incident and the "underlying degenerative back disease which pre-existed your industrial injury."

On October 10, 1981, Dr. Altizer wrote to insurer:

> "I thought I had made it entirely clear in my previous letter, which you have in your possession, that I feel very strongly there is a direct causal relationship between the preceding industrial injury and the very minimal trauma that Mrs. Coddington experienced at the time of her final episode of pain leading to her surgery. I do not believe that the kind of jerking that Mrs. Coddington described as occurring just as she fell asleep and experienced pain would be enough to damage a disc that had not previously been very significantly damaged. If such small trauma could herniate a normal disc, the majority of people in the world would have had disc surgeries."

The doctor viewed the April 23, 1981, incident as "sort of a minor additional episode which was the straw that broke the camel's back." Dr. McGee was in substantial agreement with Dr. Altizer. On October 9, 1981, he wrote to insurer:

> "[I]n all medical probability the patient did suffer injury to intervertebral disc with episodes of not only back pain but nerve root irritation prior to a final additional bulging or herniation of disc material. Although this final bulging or herniation process historically was not directly related to her work duties, I would have no difficulty in agreeing that the patient's earlier industrial injury was a material contributing

cause. The patient as you know developed severe pain symptoms and weakness which necessitated surgical decompression."

The referee reversed SAIF's denial of the aggravation claim and found that the industrial injury was a material contributing cause of the disc herniation:

"The denial of June 5, 1981 for aggravation was in error. The denial cites an off-the-job incident as being responsible for the need for surgery. The off-the-job incident in the view of both Dr. Altizer and Dr. McGee was not a new and intervening injury. The industrial injury remained a material contributing cause of the need for surgery. The other ground for the denial was the underlying degenerative back disease which pre-existed the industrial injury. There is no question that claimant indeed had pre-existing degenerative back disease, but when an industrial trauma causes a material worsening of such a condition, as occurred in this case, the claim is properly compensable to the same extent as if the trauma was imposed on a sound back."

The Board reversed the referee. It commented that Dr. McGee had changed his opinion during the deposition to assert that the industrial injury was not a material cause of claimant's worsened condition. It relied on Dr. Norton, who stated that the influence of the industrial injury on the herniation was "of no identifiable significance." It discounted Dr. Altizer's testimony, because she was not claimant's "back doctor" and had expressed "inconsistent" opinions about the cause of the herniation. The Board also thought that Dr. Altizer's testimony was not consistent with the facts of claimant's return to school bus driving and her motorcycle travel during the same period.

■ In *Grable v. Weyerhaeuser Company,* 291 Or 387, 401, 631 P2d 768 (1981), the court stated:

"'* * * We hold that an employer is required to pay worker's compensation benefits for worsening of a worker's condition where the worsening is the result of both a compensable on-the-job back injury and a subsequent off-the-job injury to the same part of the body if the worker establishes that the on-the-job injury is a material contributing cause of the worsened condition."

Claimant asserts that the compensable injury in January, 1981, was a material, contributing cause of the worsened condition represented by the herniated disc. We agree.

The Board misinterpreted Dr. McGee's testimony. On cross-examination in his deposition, he testified that the motorcycle trips that claimant took in February and March, 1981, made the industrial injury "not as significant." However, he did not conclude, as the Board states, that the January injury was "probably not a material cause of claimant's subsequent worsened disc condition." Rather, he repeated his belief that the industrial injury was a significant factor in her herniated disc, which was also Dr. Altizer's opinion.

Dr. Norton, who examined the claimant for insurer, reviewed the file and found that claimant had a "naturally progressive degenerative disc disease at the L4-5 level which was symptomatic as early as 1976." He concluded:

> "The influence of the job incident in causing the disc herniation appears to be of no identifiable significance. The condition was pre-existing, the work incident was minor, the condition is demonstrated by x-ray to have progressed from 1978 until the work incident. The work incident caused no identifiable change in the clinical course other than to cause a temporary exacerbation of symptomatology. This is well documented in * * * the clinical records of Dr. Altizer, who specifically noted as a return to the pre-level status of symptomatology. The recurring pains and symptoms thereafter relate with medical probability to a continuation of the degenerative disease process and its complicating nuclear herniation."

Dr. Norton misinterpreted Dr. Altizer's report. Her opinion on April 10, 1981, was not that claimant had returned to a "pre-level status of symptomatology" or that she had "fully recovered." Dr. Altizer indicated on April 10 that claimant was able to do household chores "with caution" and was still moving about "somewhat gingerly." On May 22, 1981, Dr. Altizer explained that her April 10 opinion was based on her misconceptions that claimant was no longer receiving medical treatment and that a return to work would not reaggravate her injury. Apparently, she also did not know that claimant had experienced pain after returning to work on March 9.

 Moreover, even if the degenerative disc disease were the principal cause of the herniation, the compensable injury was a material contributing cause of the April, 1981, worsening. A "material contributing cause" need not be the sole or principal cause. *Peterson v. Eugene F. Burrill Lumber,* 294 Or 537, 660 P2d 1058 (1983). The insurer is responsible for compensating for all worsened conditions resulting from the original injury. ORS 656.273(1). We find from the medical testimony that the January, 1981, incident was a material contributing cause of the herniation.

Reversed and remanded with instructions to reinstate referee's order.